IN RE the MARRIAGE OF: Gerald
POINDEXTER, Petitioner-Appellant-Petitioner,

v.

Ruth POINDEXTER, Respondent.

Supreme Court

*No. 85–2282. Argued November 3, 1987.—Decided February 11, 1988.*

(Also reported in 419 N.W.2d 223.)

For the petitioner-appellant-petitioner there was a brief by *Michael S. Heffernan, Stolper, Koritzinsky, Brewster & Neider, S.C.,* Madison, and oral argument by *Michael S. Heffernan.*

For the respondent there was a brief by *Sandra A. Edhlund, The Family Law Center-Edhlund & Cooper, S.C.,* Milwaukee, and oral argument by *Sandra A. Edhlund.*

WILLIAM A. BABLITCH, J. Petitioner Dr. Gerald Poindexter (Dr. Poindexter) seeks review of an unpublished decision of the court of appeals that affirms, in part, an order entered by the circuit court for Milwaukee county, Judge Patricia S. Curley,

setting maintenance at a fixed percentage of his income. Additionally, Dr. Poindexter seeks review of that portion of the court of appeals' decision which reverses the circuit court's computation of his income available to satisfy the maintenance obligation.

Our review focuses on whether it is an abuse of discretion to order Dr. Poindexter, in the face of changed circumstances, to provide maintenance to his former spouse based on a percentage of his monthly income rather than on a fixed sum. In contrast to the child support statute, which expressly provides for a percentage award, the maintenance statute neither expressly prohibits nor permits such an award. We conclude that under very unusual circumstances such as those presented here, where a party has an ability to effect significant changes in assets and income available for maintenance and has done so on several occasions over a period of time, a percentage maintenance award is within a circuit court's discretion.

However, we find that both the circuit court and court of appeals erred in computing Dr. Poindexter's income available to satisfy the maintenance obligation. We conclude that absent a finding that Dr. Poindexter transferred property to his present wife for the purpose of defeating his ex-wife's rights, none of the income from the transferred property is subject to the maintenance award under the Marital Property Act. Thus, we remand for recalculation of Dr. Poindexter's gross income.

Because the circuit court may have based the percentage maintenance award on the premise that income from the transferred assets would be available to satisfy the maintenance award, we also remand for reconsideration of the maintenance order. The assignment of legal costs, requested by Dr. Poindexter, is

denied. Accordingly, we affirm that portion of the court of appeals' decision which sustains the percentage maintenance award, reverse that portion of the court of appeals' decision which classifies Dr. Poindexter's income, and remand for further proceedings consistent with this opinion.

The facts relevant to this appeal are undisputed. In 1980, Dr. and Ruth Poindexter were divorced after approximately twenty-eight years of marriage. At the time of the divorce, Dr. Poindexter was 55 and Ruth was 50 years old. They have two adult children. Both parties stipulated to an equal division of the marital estate which was valued in excess of $440,000 and consisted of cash, securities and property.

At the time of the divorce, Dr. Poindexter was employed in private practice as a physician and was earning a gross income of approximately $9,650 per month. Ruth Poindexter was employed as a librarian, and was earning a gross income of approximately $550 dollars per month. The circuit court, Judge Robert M. Curley, ordered Dr. Poindexter to pay Ruth Poindexter approximately $3000 dollars per month in maintenance.

Between 1980 and 1984, Dr. Poindexter brought several motions to reduce the maintenance award based on a claim of changed circumstances. Specifically, he claimed that his marriage to Delores Poindexter in 1981, his support of her three minor children, and his purchase of a new home constituted changed circumstances and justified a reduction in his maintenance obligation to Ruth Poindexter. The circuit court, Judge Patricia Curley, denied these motions on the grounds that Dr. Poindexter was still able to meet his maintenance payments to Ruth Poindexter.

In January of 1984, Dr. Poindexter brought a motion to reduce his maintenance obligation based on his retirement from private practice in December of 1983. The family court commissioner recommended denial of Dr. Poindexter's motion on the ground that his retirement was for the specific purpose of evading maintenance. However, the circuit court rejected this finding, concluding that while Dr. Poindexter's retirement would reduce his maintenance obligation, this consequence was not necessarily his motivation for retirement. Following a hearing on the financial conditions of the parties on June 24, 1985, the circuit court found that Dr. Poindexter's circumstances had changed and that this change warranted a modification in the maintenance order.

Testimony from the hearings indicates that Dr. Poindexter owed $52,000 in back taxes to the Internal Revenue Service because of an $80,000 understatement of his income on his tax return. It was further revealed that in April or May of 1983, shortly before the hearing on modification of maintenance, Dr. Poindexter transferred to his present wife, Delores Poindexter, his interest in several valuable assets which he had previously owned jointly with her. These assets included his interest in his former residence, referred to as the Shepard Hills house, his present residence and some farm land. Similarly, an unspecified amount of money held in a joint account by Dr. and Delores Poindexter was transferred to Delores Poindexter's individual accounts.

In regard to these transfers, the family court commissioner found that a significant portion of the transfers was for the purpose of avoiding compliance with the maintenance order. However, the circuit court's position on this matter is inconclusive. At one

point during the hearing the circuit court discounted the relevance of the transfers, "[w]hile it is true that certain real estate and assets were transferred to his current wife ..., I don't know from this court's posture whether that's terribly relevant. ... I don't think that that alone should indicate that he was trying to evade his responsibilities to the former Mrs. Poindexter." Yet the court subsequently included the income from the transferred properties when computing Dr. Poindexter's income subject to the maintenance award. As the circuit court stated, "I guess I'm not persuaded in regards to that issue that Dr. Poindexter is penniless and is living off the generosity of his current wife. I think many of these assets that she now has are directly attributable to him."

It was further revealed at the hearings that during the same month of the transfers Delores Poindexter filed for a divorce from Dr. Poindexter. According to testimony at the hearing, Dr. Poindexter had told the process server that the action had been instituted for their "protection." Approximately six months later, Delores Poindexter dismissed the action.

Dr. Poindexter testified that subsequent to his retirement from private practice, he had accepted employment at Metro Milwaukee Medical (MMM). The employment consisted of a one year contract extending from January 1, 1985, to January 1, 1986, at a salary of $5000 per month. However, Dr. Poindexter further testified that he had submitted his resignation to MMM and that this resignation would be effective July 1, 1985, within a week of the last modification hearing.

The record does not show what Dr. Poindexter's earnings would be beyond July 1, 1985. Additionally,

it is unclear from the record whether Dr. Poindexter has, in fact, stopped working altogether. At the time of the hearing, he had filed a financial statement that showed no income except for $600 per month in rent received from the Shepard Hills house, which was now owned entirely by Delores Poindexter. However, it was revealed that Dr. Poindexter had earned an additional $23,000 in income during 1984, attributable to some late receivables from his prior medical practice.

Ruth Poindexter's testimony at the hearings indicates that her income had increased to approximately $18,000 per year since the time of the divorce. This income included her salary of $11,000, and approximately $7,000 in dividends, interest and monthly rental income.

In modifying the maintenance award due to changed circumstances, the circuit court ordered that 30 percent of Dr. Poindexter's gross income be paid to Ruth Poindexter as maintenance. The circuit court then modified the maintenance award for the period of January 1 to June 30, 1985, from $3000 to $1,680 per month, to reflect 30 percent of Dr. Poindexter's reduced monthly income of $5000. For the period after July 1, 1985, the circuit court computed that Dr. Poindexter would have income of at least $1,575 per month. This figure was based on a monthly income of $600 in rent and $975 in interest partly derived from assets transferred to his wife, Delores Poindexter, in April or May of 1984. The court concluded that even though this income is derived from assets titled in Delores Poindexter's name, it was directly "attributable" to Dr. Poindexter because of his recent transfer of assets to her and, therefore, should be treated as his income.

Dr. Poindexter appealed the circuit court's percentage maintenance award and computation of his gross income. The court of appeals affirmed the circuit court's maintenance order, finding that the circuit court did not abuse its discretion in basing the maintenance award on a percentage of Dr. Poindexter's income. However, the court of appeals concluded that the circuit court erred in attributing the income from the transferred properties solely to Dr. Poindexter. The court of appeals found that the rental income was the marital property of Dr. and Delores Poindexter and, therefore, that only one-half of the rental income was attributable to Dr. Poindexter and subject to the maintenance award. Similarly, the court of appeals found that the circuit court's determination of Dr. Poindexter's interest income was improper because this figure included income attributable to both Dr. and Delores Poindexter. Accordingly, the court of appeals remanded for recalculation of Dr. Poindexter's gross monthly income.

Dr. Poindexter filed a petition for review, renewing his challenge of the percentage maintenance award and contesting the court of appeals' classification of rental and interest income under the Marital Property Act. The petition was granted on April 14, 1987.

■

Before addressing whether the circuit court abused its discretion in ordering that Dr. Poindexter's maintenance obligation be based on a percentage of his income, we must first consider the threshold question of whether a maintenance award can ever be set as a percentage of the payer's income. Because this issue presents a question of law, we may decide it independently and without deference to the decisions

of the lower courts. *Lambert v. Wrensch,* 135 Wis. 2d 105, 115, 399 N.W.2d 369 (1987). We conclude that a percentage maintenance award is, under very unusual circumstances, within a circuit court's discretion.

The statutes controlling maintenance awards neither expressly prohibit nor allow an award which is based on a percentage of the payer's income. Section 767.32, Stats.,[1] permits a court to modify the amount of a maintenance payment, while sec. 767.26[2] sets

---

[1]"**767.32 Revision of judgment.** (1) After a judgment providing for child support under s. 767.25, maintenance payments under s. 767.26 or family support payments under s. 767.261, . . . the court may, from time to time, on the petition of either of the parties, . . . and upon notice to the family court commissioner, revise and alter such judgment respecting the amount of such maintenance or child support and the payment thereof, . . . and may make any judgment respecting any of the matters which such court might have made in the original action. . . ."

[2]"**767.26 Maintenance payments.** Upon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 767.02(1)(g) or (j), the court may grant an order requiring maintenance payments to either party for a limited or indefinite length of time after considering:

"(1) The length of the marriage.

"(2) The age and physical and emotional health of the parties.

"(3) The division of property made under s. 767.255.

"(4) The education level of each party at the time of marriage and at the time the action is commenced.

"(5) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

"(6) The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.

forth several factors which a court must consider when ordering maintenance payments. Neither statute restricts the court's ability to fashion the form of the award. Although sec. 767.26 does require that the maintenance award be based upon a consideration of several factors such as the parties' needs and ability to pay, a percentage award may, under very unusual circumstances, be responsive to these factors.

A percentage maintenance award is also consistent with the types of awards permitted under the comparable statute governing child support, sec. 767.25, Stats. This statute expressly provides that a court may specify the amount of child support as either a percentage of parental income or as a fixed sum, unless unfairness is demonstrated.

While the legislature has not provided similar guidance to courts on the form of maintenance awards we conclude, in light of the legislatively condoned use of percentage awards in child support and in the absence of language restricting the form of a maintenance award, that a percentage maintenance award is not proscribed by the maintenance statutes and is within a circuit court's discretion. We note, however,

---

"(7) The tax consequences to each party.

"(8) Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has made financial or service contributions to the other with the expectation of reciprocation or other compensation in the future, where such repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

"(9) The contribution by one party to the education, training or increased earning power of the other.

"(10) Such other factors as the court may in each individual case determine to be relevant."

that the use of a percentage maintenance award should only be considered by a court when such an award is responsive to the factors enumerated in sec. 767.26, Stats., and when very unusual circumstances of the case warrant a deviation from a fixed sum award. We now turn to the question of whether, under the specific facts and circumstances of this case, the circuit court's order modifying Dr. Poindexter's maintenance obligation as a fixed percentage of his income constitutes an abuse of discretion.

The modification of a maintenance award involves the exercise of discretion. *Fobes v. Fobes,* 124 Wis. 2d 72, 80, 368 N.W.2d 643 (1985). Therefore, the test to be applied on appeal is whether the circuit court abused its discretion in ordering that maintenance be based on a percentage of Dr. Poindexter's income rather than on a fixed sum. While the circuit court has broad discretion in determining maintenance awards, this discretion is not without limits. *Vander Perren v. Vander Perren,* 105 Wis. 2d 219, 227, 313 N.W.2d 813 (1982); *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). To withstand appellate scrutiny, the circuit court's exercise of discretion must be based on the facts appearing in the record and the appropriate and applicable law, as well as being the product of a rational mental process. *Hartung,* 102 Wis. 2d at 66.

When modifying maintenance awards, the circuit court must consider the same factors governing the original determination of maintenance set forth in sec. 767.26, Stats. *Luedke v. Luedke,* 215 Wis. 303, 308, 254 N.W. 525 (1934); *Van Gorder v. Van Gorder,* 110 Wis. 2d 188, 198, 327 N.W.2d 674 (1983). These factors

include the length of the marriage, the age and emotional health of the parties, the tax consequences to the parties, the need and income-producing abilities of the parties, and other factors deemed relevant by the circuit court. *In re the Marriage of Steinke v. Steinke,* 126 Wis. 2d 372, 386, 376 N.W.2d 839 (1985). While the court is not obligated to consider all the factors enumerated in sec. 767.26, it must consider those factors which are relevant to the case. *In re the Marriage of Trattles v. Trattles,* 126 Wis. 2d 219, 228, 376 N.W.2d 379 (Ct. App. 1985).

In the present case, Dr. Poindexter contends that the circuit court abused its discretion when ordering that maintenance be expressed as a fixed percentage of his gross income because such an order fails to consider his ability to pay maintenance, Ruth Poindexter's financial needs and the tax consequences to the parties. Additionally, Dr. Poindexter asserts that a percentage award can never suffice as a modified maintenance award and is a *per se* abuse of discretion because it cannot reflect a change in circumstances. We disagree.

The percentage maintenance award established by the circuit court addresses Dr. Poindexter's income-producing ability by permitting the maintenance obligation to vary with changes he effects in his income level. The record reveals that Dr. Poindexter not only had an ability to effect significant changes in his assets and income available for maintenance, he had a demonstrated record of doing so. After his divorce from Ruth Poindexter and his subsequent marriage to Delores Poindexter, Dr. Poindexter directly caused large fluctuations in his income level through various voluntary actions. These actions, most of which occurred just prior to or between the

maintenance modification hearings, consisted of the following events: his retirement from private practice as a physician, his transfer of his entire interest in several valuable income producing properties to Delores Poindexter, his transfer of an unspecified amount of money held in a joint account with Delores Poindexter to her individual account, and his acceptance of a one year position with MMM and subsequent resignation within one week of the last modification hearing. Further, there were other events which indirectly affected Dr. Poindexter's income, such as: an $80,000 understatement of his gross income on his tax return, resulting in a tax arrearage of $52,000; and his failure to inform the court commissioner that certain property, for which Dr. Poindexter was to place $36,000 of the sale proceeds in escrow, had been transferred to Dolores Poindexter.

Additionally, the circuit court concluded that it was likely that Dr. Poindexter would continue to work in the future thereby causing further fluctuations in his income. In consideration of this future fluctuation in income, and Dr. Poindexter's demonstrated ability to directly control his income level, the circuit court ordered that maintenance be set as a percentage of his gross income. We conclude that under these very unusual circumstances, the setting of a percentage maintenance award does address his ability to pay maintenance. In the event that the percentage maintenance award becomes unresponsive to his income-producing ability, the award may always be reconsidered by the court on the motion of either party.

Dr. Poindexter also contends that the circuit court failed to evaluate Ruth Poindexter's financial needs when it modified his maintenance obligation

and imposed a percentage award. Specifically, he claims that Ruth has no further need for maintenance. When setting maintenance, a court must evaluate need in the context of permitting the former spouse to live at a standard of living comparable to that enjoyed during the marriage. *In re the Marriage of LaRocque v. LaRocque,* 139 Wis. 2d 23, 35, 406 N.W.2d 736 (1987); *Vander Perren,* 105 Wis. 2d at 228. While maintenance is not intended to be a permanent annuity, the record does not show that Ruth Poindexter has even approached the standard of living she enjoyed during her marriage to Dr. Poindexter.

Moreover, the record indicates that the circuit court did consider Ruth Poindexter's financial needs when setting the maintenance award at a fixed percentage of Dr. Poindexter's income. The record shows that Ruth Poindexter's expenses had increased since the original order, despite an increase in her wage level. Further, the circuit court found that such expenses were valid and honestly stated. Nonetheless, the circuit court concluded that Dr. Poindexter's income-producing ability had declined since his retirement from private practice, and that this change in circumstance warranted a modification of the maintenance award. The court observed that, "[t]he problem in this case is that the parties while separated have not done as well as the parties did while they were married and living together and there has been a distinct reduction in the ability of Dr. Poindexter to generate income." Thus, while the circuit court considered Ruth's financial needs, the decline in Dr. Poindexter's income required a reduction in the amount of maintenance.

██
We note that the financial need of a former spouse is just one of several factors influencing the maintenance award. This court has recognized that the ultimate determination of maintenance has broadened in scope and is no longer based solely on need. *LaRocque,* 139 Wis. 2d at 33; *Steinke,* 126 Wis. 2d at 387. For example, the length of the parties' marriage is a factor which must be considered under sec. 767.26(1), Stats., when determining maintenance. In the present case, the circuit court found that Dr. and Ruth Poindexter's twenty-eight year marriage was a factor which obligated Dr. Poindexter to continue providing maintenance to Ruth Poindexter.

██
We also reject Dr. Poindexter's assertion that a percentage maintenance award precludes any consideration of tax consequences to the parties. Under the analogous statute for child support, sec. 767.25, Stats., the court is required to consider the tax consequences to parents when modifying a percentage-based award. If there is clear and convincing evidence that the percentage standard is unfair to the child or parties because it fails to consider tax consequences or other factors enumerated under the statute, then the court may modify the amount of child support payments. Similarly, when setting a percentage maintenance award, the court is equally capable of evaluating this factor, albeit in a maintenance context. Section 767.26(7). Although the circuit court made no specific references to the tax consequences when setting Ruth Poindexter's maintenance award, the court was undoubtedly aware of the importance of this consideration to the parties. The parties had emphasized the tax consequences of maintenance. The court also had

the benefit of the parties' stipulated agreement concerning the tax consequences of various hypothetical maintenance awards. Therefore, we find that the percentage maintenance award does not preclude consideration of the tax aspects of maintenance and that the circuit court did not abuse its discretion in this regard when setting a percentage maintenance award.

Finally, we reject Dr. Poindexter's claim that a percentage maintenance award can never reflect changed circumstances. The ability of a percentage award to reflect a change in the payer's circumstances is demonstrated in the present case. Prior to Dr. Poindexter's motion for modification of maintenance he was paying a fixed amount of $3000 in maintenance to Ruth Poindexter. This monthly lump sum constituted approximately 30 percent of his gross income. Subsequently, Dr. Poindexter retired from private practice, causing a decline in his income, and the circuit court modified his maintenance obligation in response to this changed circumstance. While retaining the 30 percent apportionment, the circuit court reduced the amount of the maintenance payments by basing the award on a percentage of his gross income rather than on a fixed sum. Consequently, Dr. Poindexter was able to have his monthly maintenance payments to Ruth adjust to fluctuations in his income stemming from his changed circumstances. Rather than requiring Dr. Poindexter to continue to pay a fixed monthly sum in maintenance to Ruth, irrespective of his declining income, under the new percentage-based award the court calculated that Dr. Poindexter should pay the reduced amount of $1685 consistent with his reduced income level.

■
Dr. Poindexter argues that the circuit court failed to independently exercise its discretion when setting the percentage maintenance award and, therefore, abdicated its judicial responsibility. Specifically, he focuses on the circuit court's finding that, "there [should] be some continuity in these cases and that the obligation to support a former spouse doesn't go up and down depending on the whim of the judge that is hearing the case so I think it is appropriate to use the ratio set by the trial court. ..." We find that this statement is not indicative of an abdication of judicial responsibility. While the circuit court did retain a 30 percent apportionment, it independently exercised its discretion by imposing a percentage rather than fixed sum award. Moreover, as previously noted, the record reveals that the court based the maintenance order on a consideration of several factors enumerated in sec. 767.26, Stats.

In summary, we conclude that the circuit court did not abuse its discretion in setting maintenance based on a percentage of Dr. Poindexter's income. Application of a percentage maintenance award in the present case is a decision which a reasonable judge could arrive at by consideration of the maintenance and child support statutues, the unique income-affecting action undertaken by Dr. Poindexter and by a process of logical reasoning. *See Hartung,* 102 Wis. 2d at 68. Therefore, we affirm the use of a percentage maintenance award under these very unusual circumstances.

Dr. Poindexter also challenges the court of appeals' application of the Marital Property Act, ch. 766, Stats., when computing his gross income available to satisfy the maintenance award. The court of appeals

concluded that the rental income from property Dr. Poindexter transferred to Delores Poindexter was marital property and, therefore, that half of this income was subject to the maintenance award. We hold that, absent a finding that Dr. Poindexter transferred the property in question to his present wife for the purpose of defeating his ex-wife's rights, none of the income from the transferred properties is available to satisfy the maintenance award under the Marital Property Act.[3]

The first step in applying the Marital Property Act (the Act) is to classify the property in question. In order to begin classification under the Act, it is necessary to ascertain Dr. and Delores Poindexters' "determination date," or when the marital property system became applicable to them. Under sec. 766.01(5), Stats., the determination date for spouses is the last of the following to occur: 1) the date a Wisconsin couple is married; 2) January 1, 1986, the effective date of the Act; or 3) the date spouses established a marital domicile in Wisconsin. The record shows that Dr. and Delores Poindexter were married in 1981, and established a marital domicile in Wisconsin. Accordingly, their determination date under the Act is January 1, 1986. Dr. Poindexter transferred his ownership interest in his assets to Delores Poindexter in April or May of 1984. Because

[3]Our decision today does not preclude the circuit court from considering on remand whether Dr. Poindexter intended to defraud his former spouse by such transfers. A circuit court has the power to make the transferee a party to cancel the fraudulent transfer to the extent necessary to protect the rights of the former spouse. *See Caldwell v. Caldwell,* 5 Wis. 2d 146, 92 N.W.2d 356 (1958); sec. 242.07, Stats.

Delores acquired this interest in the assets before the January 1, 1986, determination date, the property is not classified by the Act and is generally referred to as "predetermination date" property. Section 766.31(8);[4] *see also* T. Meuer and J.M. Weisberger, *A Marital Property Handbook,* at 4 (1986); K. Christiansen, F. Wm. Haberman, J. Haydon, D. Kinnamon, M. McGarity, M. Wilcox, *Marital Property Law in Wisconsin* (2nd ed. 1986).

Under sec. 766.31(9), Stats.,[5] property owned during marriage and immediately before the determination date is treated "as if it were individual property." For purposes of analysis under the Act, then, the transferred property interests are treated as if they were Delores' individual property. However, sec. 766.31(4)[6] of the Act classifies the income from a

---

[4]"**766.31(8) Classification of property of spouses.**
"(8) Except as provided otherwise in this chapter, the enactment of this chapter does not alter the classification and ownership rights of property acquired before the determination date or the classification and ownership rights of property acquired after the determination date in exchange for or with the proceeds of property acquired before the determination date."

[5]"**766.31(9) Classification of property of spouses.**
"(9) Except as provided otherwise in this chapter and except to the extent that it would affect the spouse's ownership rights in the property existing before the determination date, during marriage the interest of a spouse in property owned immediately before the determination date is treated as if it were individual property."

[6]"**766.31(4) Classification of property of spouses.**
"(4) Except as provided under subs. (7)(a), (7p) and (10), income earned or accrued by a spouse or attributable to property of a spouse during marriage and after the determination date is marital property."

spouse's individual property, accruing during marriage and after the determination date, as marital property. Therefore, the rental income derived from the transferred properties is classified as Dr. and Delores Poindexters' marital property. While the court of appeals reached this preliminary conclusion, the analysis is incomplete.

Despite the classification of this income as marital property, the use of the income to satisfy the maintenance order is proscribed by sec. 766.55, Stats., the Act's provision on the obligation of spouses. Subsection 766.55(2)(c)2[7] specifies what income is reachable by a former spouse to satisfy an obligation incurred prior to January 1, 1986, the effective date of the Act. In the present case, Dr. Poindexter's maintenance obligation to Ruth Poindexter was incurred in January of 1980, and, therefore, was prior to the Act's effective date. Under the statute, the obligation "may be satisfied only from property of that spouse that is not marital property and from that part of marital property which would have been the property of that spouse but for the enactment of this chapter [the Marital Property Act]." Section 766.55(2)(c)2. Thus, the statute indicates that there are two property sources which may be used to satisfy the obligation.

---

[7] "766.55(2)(c)2 Obligations of spouses.

"2. An obligation incurred by a spouse before, on or after January 1, 1986, that is attributable to an obligation arising before January 1, 1986, or to an act or omission occurring before January 1, 1986, may be satisfied only from property of that spouse that is not marital property and from that part of marital property which would have been the property of that spouse but for the enactment of this chapter."

The first source is Dr. Poindexter's non-marital property. Inasmuch as the record indicates that Dr. Poindexter transferred his interest in his assets to Delores Poindexter, he has no remaining non-marital property which is subject to the award.

The second source of property available to satisfy Dr. Poindexter's pre-Act obligation to Ruth Poindexter, "is that part of marital property which would have been the property of that spouse but for the enactment of this chapter [The Marital Property Act]." Section 766.55(2)(c)2, Stats. But for the enactment of the Act, the rental income would be the solely owned property of Delores Poindexter and would not be classified as marital property. Thus, according to the express language of the statute, none of Dr. Poindexter's marital property interest in the rental income is subject to the maintenance obligation.

This outcome is consistent with the comments to a similar provision of the Uniform Marital Property Act (UMPA), on which Wisconsin's Marital Property Act is based. Legislative Reference Bureau, State of Wisconsin, Informational Bulletin 84–IB–1, *Marital Property Act, A Compilation of Materials,* 45, 57–58 (1984). The comments differentiate between the marital property income accruing to the spouse who has incurred the pre-marital obligation (the "obligated" spouse or, in this case, Dr. Poindexter) and the spouse who has not incurred the pre-marital obligation (the "non-obligated" spouse or, in this case, Delores Poindexter). Where the income accrues to the obligated spouse, all the income is subject to the pre-marital obligation even though the income is classified as marital property. The objective of this rule is to make marriage neutral under the marital property system with

respect to a pre-marital creditor, such that the system neither adds nor detracts from the assets available to satisfy the creditor's claim. *Id.* at 58.

██

Applying this rationale to the present case, the income attributable to Delores Poindexter's property cannot be reached to satisfy Dr. Poindexter's maintenance obligation. Because Delores Poindexter is the non-obligated spouse the income derived from her properties cannot, by operation of the Act, enhance the assets available to satisfy a pre-marital obligation.

██

Ruth Poindexter asserts that a related subsection on the obligation of spouses, sec. 766.55(2)(c)1, Stats.,[8] dictates that all of the marital property income from the transferred properties is subject to the maintenance award. This subsection is similar to sec. 766.55(2)(c)2, but does not expressly refer to obligations arising prior to January 1, 1986, the Act's effective date. We conclude that this provision is not controlling in the present case. In contrast to subsec. (2)(c)1, subsec. 766.55(2)(c)2 was intended to specifically govern the satisfaction of pre-Act obligations, the situation presented in the instant case. Wis. Legis. Council Staff Info. Memorandum 85–7, Part I, *Original and Supplemental Explanatory Notes (1985 Wisconsin Act 37)* at 22 (1986).

---

[8] "766.55(2)(c)1 **Obligations of spouses.**

"(c)1. An obligation incurred by a spouse before or during marriage that is attributable to an obligation arising before marriage or to an act or omission occurring before marriage may be satisfied only from property of that spouse that is not marital property and from that part of marital property which would have been the property of that spouse but for the marriage."

The court of appeals also concluded that the circuit court erred in attributing to Dr. Poindexter all of the interest income from accounts and monies which Dr. Poindexter had transferred to Delores Poindexter. When determining the monthly interest income figure, the circuit court had apparently relied on the annual interest income reported in the joint tax return filed by Dr. and Delores Poindexter. The court of appeals found that the interest income consisted of Delores Poindexter's separate income as well as income attributable to Dr. Poindexter, and remanded for computation of Dr. Poindexter's gross income. Because the record is unclear whether the interest income includes interest other than that attributable to the money which Dr. Poindexter transferred to Delores Poindexter, we affirm that portion of the court of appeals' decision that remanded for a determination of whether any interest income is reachable under the Act and we direct the circuit court to recompute Dr. Poindexter's gross monthly income.

We note that further consideration of the maintenance order may also be required. When the circuit court issued the maintenance order in November of 1985, the Marital Property Act was not yet in effect. The circuit court assumed that the income from assets which Dr. Poindexter transferred to Delores Poindexter would be available to satisfy the maintenance award. As the court stated in the amended order,

"…. any current income of Dr. Poindexter will be governed by the thirty percent figure.
"….
"I find that the rental income, dividends and interest, which were owned by Dr. Poindexter and

transferred to his present wife, while technically in his present wife's name, are assets directly attributable to Dr. Poindexter.

"....

.... "commencing July 1, 1985, the maintenance shall be presumed to be 30% of the interest, dividends, rents, and gross earnings. ..."

Because the circuit court's maintenance order may have been premised on the now erroneous assumption that income from the transferred property would be subject to the maintenance order, we remand for reconsideration of the order.

If the percentage maintenance order is retained by the circuit court, we further direct the circuit court on remand to establish enforcement mechanisms for compliance with the order. Such enforcement mechanisms may include a requirement that Dr. Poindexter regularly furnish his tax returns and a financial statement to Ruth Poindexter so an annual adjustment may be made to accurately reflect 30% of his net income before taxes.

Lastly, we consider Dr. Poindexter's claim that he should be awarded double costs pursuant to rule 809.25(1)(a)4 and (b), Stats., or alternatively that no costs should be awarded to Ruth Poindexter. An award of double cost is discretionary with the supreme court. *Onderdonk v. Lamb,* 79 Wis. 2d 241, 250, 255 N.W.2d 507 (1977). In light of our mixed disposition of this case, we are not directed under rule 809.25, to award costs to either party. While counsel for Ruth Poindexter has not fully complied with the briefing order, we do not find that such actions justify the imposition of double costs. Accordingly, we conclude that each party shall bear its own costs.

*By the Court.*—The decision of the court of appeals is affirmed in part, reversed in part and remanded to the circuit court for further proceedings consistent with this opinion.

HEFFERNAN, C.J., took no part.

WILLIAM G. CALLOW, J. *(concurring).* I concur with the majority but write separately to express my opinion that setting maintenance as a fixed percentage is appropriate in most cases. Where there is a fixed amount awarded for maintenance, any change in the paying spouse's income requires court action to accomplish an adjustment to maintenance in the absence of a stipulation by the parties. However, by providing a percentage award, increases or decreases in the paying spouse's income automatically result in a corresponding adjustment to the maintenance award. Because the costs associated with court intervention are substantial and because the parties involved are often financially distressed, the use of a percentage award and its automatic adjustment is preferable.

If circumstances which result from the application of the percentage change are unacceptable to either party, then judicial review of the maintenance may be sought. Because I conclude that the percentage method is the most appropriate vehicle to reflect a change in circumstance without the necessity of court intervention, I would permit a fixed percentage award.

STEINMETZ, J. *(concurring).* I agree with the majority in the result reached in this case; however, I disagree with the reasoning. Specifically, I would hold that maintenance should not be based on a percentage

of income of the paying ex-spouse for the reasons stated below.

First, we have long recognized that divorce and proceedings thereon are entirely statutory. *See, e.g., Towns v. Towns,* 171 Wis. 32, 176 N.W. 216 (1920). While sec. 767.26, Stats., the statutory scheme governing maintenance awards, does not expressly *prohibit* percentage awards, neither does it expressly *permit* such awards. The legislature was obviously cognizant of such awards; percentage awards are expressly authorized elsewhere in family law, in the statute governing child support, sec. 767.25. However, the legislature apparently saw fit not to provide for percentage based maintenance awards, and this court should not question the legislative scheme by condoning a judicially created percentage based maintenance award.

Secondly, a percentage award should not be permitted because it allows the obligor spouse exclusive control of the award by diminishing his or her income. That is, a percentage award permits the obligor spouse to minimize maintenance payments through various means. There is an appearance of such action in this case even though the trial judge did not make a finding of fraud on the part of the obligated ex-husband. At the very least, a percentage award provides an incentive for the obligor spouse to circumvent maintenance. A percentage award presents too much of an opportunity for conniving, deceit and contrived income to affect the dollar amount of maintenance.

Thirdly, if the obligor spouse does attempt to avoid maintenance through property transfers, retirement or other means, the burden is shifted to the spouse receiving the maintenance to come back into

court and continually relitigate the amount of income to which a percentage is properly applied. Conversely, if a fixed sum of maintenance is awarded, the obligor spouse properly carries the burden of coming back into court to prove changed circumstances justifying a reduction of maintenance. The burden of who comes forward into court to seek a review may be critical as to attorney fees and costs.

I realize the majority has stated in limitation that it concludes that a percentage maintenance award is, under very unusual circumstances, within a circuit court's discretion. The percentage award is an interesting approach and superficially would appear to minimize the number of times the parties return to court to litigate maintenance; however, I believe it may have the opposite effect. Moreover, the question of whether it is a desirable approach should be decided by the legislature.

Contrary to the trial court's finding that "there has been a distinct reduction in the ability of Dr. Poindexter to generate income," it was not his ability to produce income that was reduced but rather his desire to produce income. His ability or capacity to produce income remained constant, and if he had to meet a monthly dollar award of maintenance, he would have to continue to fulfill this capacity to earn income. While Dr. Poindexter's decision to "retire" (if he has in fact done so) may well constitute a changed circumstances justifying a modification of maintenance, the majority opinion ignores, as did the circuit court, that this decision was wholly voluntary. There is a recognizable difference between one's ability to generate income and one's desire or choice to do so. This choice may indeed lead to a diminished capacity

to generate income. However, this concept is quite different than the concept of one's "ability" to earn. I concur in the judgment of the court.