**COURT OF APPEALS
DECISION
DATED AND FILED**

**February 23, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* **WIS. STAT. § 808.10 and RULE 809.62.**

Appeal No. **2019AP2126**

Cir. Ct. No. **1995FA955652**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

---

IN RE THE MARRIAGE OF:

LAWRENCE F. LEFEBVRE,

      PETITIONER-APPELLANT,

  V.

LINDA R. LEFEBVRE,

      RESPONDENT-RESPONDENT.

---

APPEAL from an order of the circuit court for Milwaukee County: JANE V. CARROLL, Judge. *Affirmed in part, reversed in part, and cause remanded for further proceedings*.

Before Brash, P.J., Donald and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Lawrence F. Lefebvre appeals from an order of the trial court modifying the maintenance he is required to pay to his former wife, Linda R. Lefebvre, including the imposition of retroactive arrearages in the amount of $78,200. Lawrence argues that the trial court erroneously exercised its discretion in calculating the modification. Lawrence also appeals the court's finding that he was in contempt of court for failing to pay life insurance premiums in accordance with their marital settlement agreement (MSA), arguing that the evidence is insufficient to support that finding.

¶2 We conclude that the court failed to consider certain relevant factors in modifying Lawrence's maintenance payments, and thus did erroneously exercise its discretion in that regard. We therefore reverse those portions of the trial court's order regarding the amount of maintenance owed by Lawrence, including the related arrearages, and remand this matter for further proceedings consistent with this opinion. However, we affirm the trial court's order finding Lawrence in contempt for failing to pay life insurance premiums.

## BACKGROUND

¶3 The parties in this case were divorced on January 30, 1996, after almost thirty years of marriage. Both were represented by counsel during the divorce proceedings. At the time the divorce was finalized, they executed an MSA which provided, among other things, for the payment of maintenance by Lawrence to Linda, based on a percentage of his gross earned income. The maintenance payments were to continue for an indefinite period, but would terminate upon the death of either party or the remarriage of Linda. Furthermore, the retirement of Lawrence, or Linda living in a marriage-like situation, would be considered a

"change in circumstance" triggering Lawrence's right to bring a motion to modify the maintenance order.

¶4 Also included in the MSA, as relevant to this appeal, was a provision for property division involving four rental properties in Milwaukee owned by Lawrence and Linda at the time of their divorce. The MSA provided that they were to split the income and expenses relating to these rental properties until December 2004, at which time Linda conveyed her interest in the properties to Lawrence. From that time forward, Lawrence was entitled to all of the income generated by those properties.

¶5 In November 2015, Linda filed an order to show cause to pursue contempt proceedings against Lawrence for failure to pay maintenance. In that order, Linda stated that according to the MSA, Lawrence was to pay her 50% of his gross earned income. Linda alleged that since December 1998, Lawrence had deliberately understated his gross earned income, and further, that he had not made any maintenance payments since 2011. Additionally, Linda asserted that she had paid bills that Lawrence was obligated to pay under the MSA, including life insurance premium payments, for which she was seeking reimbursement.

¶6 Shortly after Linda filed the order to show cause, Lawrence filed a motion to terminate maintenance. In an accompanying affidavit, Lawrence stated that he had retired from his employment with Steen-Macek, a paper distributor, in 2001. Since then, he had continued to pay Linda maintenance "as [he] could," often paying more than 50% of "any income [he] had," although he unilaterally stopped making maintenance payments beginning in 2011. He explained that the only income he currently has is social security and some income from managing rental

properties. He also noted that he had recently filed bankruptcy. He therefore was seeking to terminate his maintenance obligation under the MSA.

¶7 The matter first went before a family court commissioner, who determined that Lawrence owed Linda $2,000/month in maintenance, based on all his current sources of income. However, Lawrence timely filed a motion for the trial court to conduct a *de novo* review of the court commissioner's order.[1] At a pretrial conference on the matter, the parties agreed that a determination of the definition of "[gross] earned income" under the MSA was necessary to proceed, and elected to pursue this issue through motions for summary judgment.

¶8 In Lawrence's motion for partial summary judgment on this issue, he contended that the definition of gross earned income represents income earned from working a job and does not include rents, capital gains, social security benefits, or income from private pensions and annuities. Linda also filed a motion for partial summary judgment, arguing that gross earned income should include all of the income Lawrence declared on his income tax returns, including the rents he collects from his investment properties and the fees he receives from managing rental properties for others. Furthermore, Linda asserted that because gross earned income was not defined in the MSA, and the parties had differing definitions which were both reasonable, the term was ambiguous. She thus urged the court to look to extrinsic evidence—specifically, Lawrence's tax returns and the varying amounts of the maintenance payments he had paid over the years—to make a determination of what the parties believed the term meant. Based on her definition and

---

[1] This matter was initially assigned to the Honorable Kevin E. Martens, who heard the cross motions for partial summary judgment. The Honorable Jane V. Carroll presided over the subsequent court trial and issued the order that is the subject of this appeal. We refer to them both as the trial court.

calculations, Linda contended that Lawrence was in arrears for maintenance in an amount over $220,000.

¶9      After a hearing on both parties' motions, conducted in February 2017, the trial court granted Lawrence's motion and denied Linda's motion. The trial court agreed with Lawrence's definition of "gross earned income," based on the definition in Black's Law Dictionary and the "common sense" meaning of the term. Simply put, he found that gross earned income meant "the money that a person earns from working at a job," and that was "the obligation and the agreement the parties have for the purpose of maintenance" under the MSA. Additionally, the trial court specifically noted that with regard to rental income—"at least up till that … 2004 date" when Linda conveyed her interest in their rental properties to Lawrence—the rental income from those properties "is something different than the gross earned income" referenced in the MSA. However, after a request for clarification by Linda regarding whether Lawrence's job as a property manager "collecting rents" was included in the court's definition, the court stated that its definition would "encompass anything that constitutes employment income … not employment in the sense you have an employer. It's income through work, self-employment or something else."

¶10      The parties then agreed to utilize the services of a financial expert who, using the definition determined by the court, would calculate the amount of maintenance owed by Lawrence, if any. The financial expert calculated that Lawrence had overpaid maintenance in the range of $87,374-$93,822. Linda contested this calculation, however, stating that it was inaccurate because it did not include any rents that Lawrence had received as income. Linda asserted that this rental income should be included as part of Lawrence's gross earned income in calculating his maintenance obligations based on the trial court's clarification that

the term included income from self-employment. Linda explained that she believed this to be a "viable issue" for determination at the impending court trial on the matter.

¶11     That court trial was held in May 2019. Both Lawrence and Linda testified, as well as the financial expert. Ultimately, the trial court found that Lawrence was in contempt for failing to make the insurance premium payments, and ordered that he pay Linda $21,200.76 plus reasonable attorney's fees.

¶12     Additionally, while the trial court denied Linda's motion for contempt based on Lawrence's failure to pay maintenance, it found that there was "no basis in fact or law to terminate maintenance at this time." Furthermore, noting the earlier partial summary judgment ruling[2] that the definition of gross earned income in the MSA "contemplated money earned from employment," the court found that "Lawrence is still working full time managing his own properties," and that he could, if he so chose, continue to manage rental properties for others as he did from 2002-2006.

¶13     Therefore, in calculating Lawrence's income for purposes of maintenance, the trial court imputed a range for the rental income from the investment properties currently owned by Lawrence, based on the amounts he had claimed on his taxes from 1998 through 2018, with a "significant allowance" for

---

[2] We note that in the trial court's decision, it is incorrectly stated that Linda's motion for partial summary judgment was granted. On the contrary, the trial court specifically stated that it was granting Lawrence's motion for partial summary judgment and denying Linda's motion.

expenses.[3] The trial court also imputed one-half of the average of the management fees that Lawrence had earned from 2002-2006, the time frame during which he had claimed such fees as income. Based on these calculations, the court determined that an award for maintenance in the amount of $1,700/month was fair and equitable.[4] It further determined that this maintenance award commenced on December 1, 2015—the first month after Linda had filed her order to show cause—and thus Lawrence was forty-six months in arrears, resulting in an amount owed to Linda of $78,200.

¶14    This appeal follows.

## DISCUSSION

¶15    Lawrence's arguments on appeal primarily challenge the trial court's exercise of discretion in modifying his maintenance payments. The trial court has the authority to modify a maintenance award under WIS. STAT. § 767.59(1c)(a) (2017-18)[5] upon a "petition, motion, or order to show cause of either of the parties[.]" *See id.* Such a modification "involves the exercise of discretion." *Poindexter v. Poindexter*, 142 Wis. 2d 517, 531, 419 N.W.2d 223 (1988). "[A] discretionary determination must be the product of a rational mental process by

---

[3] In making its determinations about imputing income, the trial court did not include Lawrence's income from social security, his pension, or the capital gains he realized though the sale of investment properties.

[4] In ordering a fixed amount for the maintenance payments, as opposed to a percentage of Lawrence's income as provided in the MSA, the trial court noted that it did not believe a "percentage award of maintenance is fair and equitable," citing *Poindexter v. Poindexter*, 142 Wis. 2d 517, 530-31, 419 N.W.2d 223 (1988) ("the use of a percentage maintenance award should only be considered by a court when such an award is responsive to the factors enumerated in [§] 767.26 … and when very unusual circumstances of the case warrant a deviation from a fixed sum award").

[5] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). Conversely, the court "engages in an erroneous exercise of discretion when it fails to consider relevant factors, bases its award on factual errors, makes an error of law, or grants an excessive or inadequate award." *Rohde-Giovanni v. Baumgart*, 2004 WI 27, ¶18, 269 Wis. 2d 598, 676 N.W.2d 452.

¶16 Before a maintenance award can be modified, the party seeking modification "must demonstrate that there has been a substantial change in circumstances warranting the proposed modification." *Id.*, ¶30. "When modifying maintenance awards, the [trial] court must consider the same factors governing the original determination of maintenance[.]" *Poindexter*, 142 Wis. 2d at 531. These factors "reflect and are designed to further the two primary objectives of maintenance—'to support the recipient spouse in accordance with the needs and earning capacities of the parties' and 'to ensure a fair and equitable financial arrangement between the parties.'" *Ladwig v. Ladwig*, 2010 WI App 78, ¶17, 325 Wis. 2d 497, 785 N.W.2d 664 (citation omitted). Indeed, the "correct test" for making a modification determination is whether the result is "fair[] to both of the parties under all of the circumstances[.]" *Rohde-Giovanni*, 269 Wis. 2d 598, ¶32.

¶17 As a threshold matter, we address Lawrence's contention that Linda's order to show cause did not include notice that she was seeking modification of

maintenance.[6] Rather, Lawrence asserts that it was simply a request to find him in contempt for failing to pay maintenance—a request that was ultimately denied.

¶18     As noted above, under WIS. STAT. § 767.59(1c)(a), the trial court has the authority to modify a maintenance award upon the filing of an order to show cause by either party. The order to show cause filed by Linda indicated that Lawrence had failed to pay maintenance in the amount of "$TBD." Linda also alleged that Lawrence had "deliberately understated the amount of his gross earned income" and had not paid her anything since 2011. We conclude that this was sufficient to put Lawrence on notice that Linda was seeking a determination of the maintenance owed her that was based on an accurate calculation of Lawrence's current income.

¶19     Turning to the modification determination, the trial court determined that there had been a substantial change in circumstances that warranted maintenance modification. Specifically, it found that Lawrence was no longer earning W-2 income as he had been at the time of the divorce, and instead was deriving his income from his rental properties. With that said, we also address Lawrence's argument that the court failed to apply the definition for gross earned income as determined in the earlier partial summary judgment ruling.

---

[6] This contention was included in Lawrence's argument that the trial court erroneously exercised its discretion in applying the modified maintenance payments retroactively—back to December 2015, after Linda filed her order to show cause. While we agree that applying payments retroactively is a discretionary decision, *see* ***Rohde-Giovanni v. Baumgart***, 2004 WI 27, ¶17, 269 Wis. 2d 598, 676 N.W.2d 452, we disagree that the maintenance modification ordered by the court was retroactive in nature, in that it required Lawrence to pay the modified amount from time that Linda initiated these proceedings with the filing of her order to show cause. Indeed, it was simply a resumption of maintenance payments that were not previously terminated. We therefore do not discuss this argument further.

¶20     As explained above, that ruling was that gross earned income under the MSA was "the money that a person earns from working at a job," which the trial court clarified included income that came from "self-employment or something else." The ruling included a finding that Lawrence was "still working full time managing his own properties[.]" The court noted that the financial expert had testified at the trial that "Lawrence is self-employed as a real estate professional, for purposes of tax reporting, given the amount of time that he spends in managing the properties." Additionally, Lawrence testified that he had been self-employed as a "landlord" since 2008. In fact, he stated that was what he had been "doing for a living" since he retired. Thus, the court's consideration of Lawrence's income from his work as a self-employed landlord was in alignment with the partial summary judgment ruling.[7]

¶21     In making its modification calculations, the trial court discussed both the objectives of maintenance as well as the statutory factors that require consideration for maintenance determinations. It noted that many of the statutory factors had not changed in the years since the parties were divorced, such as the long-term length of their marriage; Linda's earning capacity, based on educational level, work skills and experience, and the effect her responsibilities for the care of their children over the years had on those things; and the feasibility that Linda could

---

[7] Additionally, we note that, although not discussed by the trial court, there is no issue as to whether the rental income imputed to Lawrence comes from the four rental properties owned jointly by Lawrence and Linda at the time of their divorce, which were subsequently conveyed to Lawrence in 2004. Lawrence's financial disclosure statement, which listed the rental properties he owned at the time of the trial, indicated that he no longer owns those four properties. Even if Lawrence did still own those properties, we note that "investment income from assets awarded to a spouse as part of an equal division of property pursuant to a divorce settlement generally can be included in calculating that spouse's income for purposes of revising a maintenance award to the payee spouse[.]" *See* **Hommel v. Hommel**, 162 Wis. 2d 782, 792, 471 N.W.2d 1 (1991).

become self-supporting at a similar standard of living as she had when she and Lawrence were married. *See* WIS. STAT. § 767.56(1c).

¶22    The trial court found that without maintenance, Linda's expenses were greater than her income by about $2,000 per month. The court further noted that Linda is "in poor health" and that she is fully retired and "has no ability to earn income beyond Social Security, pension, and maintenance[.]" In contrast, the court found that Lawrence is still "in reasonably good health," that he "continues to earn an income from his rental property enterprises," and that he is remarried and his wife "has contributed to the family income."

¶23    However, there were other relevant factors that should have been considered in calculating the maintenance modification. In the first place, the trial court's calculations considered Lawrence's income from 1998 to the time of trial, even though Lawrence continued to pay maintenance to Linda through 2010. Presumably, this was based on Linda's allegation in her order to show cause that Lawrence had "deliberately understated the amount of his gross earned income" to Linda from 1998 to the time she filed that order.

¶24    In fact, the record shows that between 1998 and 2010, Lawrence's income ranged from approximately $24,500 to over $129,000. The trial court noted that Lawrence's reported rental income was "widely disparate" throughout that time frame, observing that it "varied greatly from year to year" depending on the number of properties he owned. Although it noted that some of his claimed expenses were "unusually high," it did *not* make a finding that Lawrence had deliberately understated his income during that time frame. Without such a finding, the fact that Linda had already received a percentage of Lawrence's income through 2010 was a

relevant factor that should have been considered in making the modification calculation.

¶25 We apply the same reasoning to the income from the management fees that Lawrence earned between 2002 and 2006 which the trial court imputed to Lawrence: Linda already received maintenance payments based on that income, and thus that is a relevant factor that should have been considered in the modification calculation. Furthermore, in imputing that management fee income, the court found that while Lawrence "chooses to only manage his own properties," he has "the skills and experience necessary to continue to earn" management fees. However, this fails to take into consideration that at the time of the court's decision, Lawrence was seventy-four years old, and thirteen years older than he was at the time he was managing additional properties. In other words, the court's reasoning for imputing management income to Lawrence did not include consideration of the relevant factor that Lawrence is now older and well beyond the standard age for retirement.

¶26 Moreover, while the trial court noted that Lawrence is remarried and that his wife "contributed to the family income," it did not appear to take into account marital property laws that may apply to Lawrence's current wife. *See* WIS. STAT. § 766.31. This is also a relevant factor that should have been considered in the modification calculations.

¶27 Because these relevant factors were not discussed by the trial court, we conclude that it erroneously exercised its discretion by failing to consider them when making the maintenance modification calculations. *See **Rohde-Giovanni***, 269 Wis. 2d 598, ¶18. Therefore, further proceedings are required such that these factors may be taken into account in calculating a maintenance modification award.

¶28 Additionally, Lawrence argues that there is insufficient evidence to support the trial court's finding that he was in contempt for failing to pay the premiums on the life insurance policies. "Contempt of court" includes the intentional "[d]isobedience" of a court order. WIS. STAT. § 785.01(1)(b). The trial court may impose either punitive or remedial sanctions upon a finding of contempt. WIS. STAT. § 785.02. We review the trial court's use of its contempt power under the erroneous exercise of discretion standard. *Benn v. Benn*, 230 Wis. 2d 301, 308, 602 N.W.2d 65 (Ct. App. 1999).

¶29 Lawrence testified that he had not received any bills for the life insurance premiums, although they should have been coming to him. He further stated that he felt that Linda could have made the premium payments out of her maintenance payments, but that "technically" he should have made them. Based on that testimony, the trial court found that Lawrence was aware of his requirement to pay the insurance premiums under the MSA, and that he admitted that he had not fulfilled this obligation. Thus, that decision properly applied the law and is supported by the record. Therefore, the trial court did not erroneously exercise its discretion in imposing sanctions against Lawrence for his failure to pay the premiums. *See Hartung*, 102 Wis. 2d at 66.

¶30 Accordingly, we reverse those portions of the trial court's order relating to the maintenance modifications, and remand this matter for further proceedings consistent with this opinion. However, we affirm that part of the order finding Lawrence in contempt of court for failing to pay the life insurance premiums as ordered in the MSA.

*By the Court.*—Order affirmed in part, reversed in part, and cause remanded for further proceedings.

13

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.