IN RE the MARRIAGE OF: William H. HOMMEL,
Petitioner-Appellant-Petitioner,

v.

Sharon W. HOMMEL, Respondent.

Supreme Court

*No. 89–1685. Argued April 23, 1991.—Decided June 19, 1991.*

(Also reported in 471 N.W.2d 1.)

For the petitioner-appellant-petitioner there were briefs by *Karen A. Mercer* and *Cross, Jenks, Mercer and Maffei,* Baraboo and oral argument by *Karen A. Mercer.*

For the respondent there was a brief by *Yolanda I. Lehner* and *Julian, Julian, Musial & Wettersten, S.C.,* Madison and oral argument by *Ms. Lehner.*

STEINMETZ, J.   The primary issue in this case is whether investment income from assets awarded to a spouse as part of an equal division of property pursuant to a divorce settlement can be included in calculating that spouse's income for purposes of revising a maintenance award to the other spouse in accordance with sec.

767.32, Stats.[1]

A second issue is whether, in calculating a spouse's income for maintenance purposes in accordance with sec. 767.32, Stats., a court should exclude from that figure what the payor spouse must transfer to the payee spouse as interest on a deferred cash property obligation.

The Sauk county circuit court, Honorable Robert F. Curtin, ruled in the affirmative both as to the primary issue and as to the second issue. In addition, as to the underlying motion made by the maintenance payor spouse for a reduction in maintenance payments, the court held that that spouse had failed to meet his burden of proof regarding his income for the year at hand and accordingly had not shown a substantial change in circumstances as would have been necessary for the court to grant the motion under, *e.g., Van Gorder v. Van Gorder,* 110 Wis. 2d 188, 195, 327 N.W.2d 674 (1983). Thus, the court denied the motion.

In an unpublished opinion, the court of appeals affirmed the trial court as to the primary issue but reversed that court as to the second issue. Contrary to the trial court, however, the court of appeals found that the evidence submitted at the revision hearing was sufficient to show the income of the payor spouse for the year at hand. The court of appeals determined that the payor spouse thus might have shown a substantial change in circumstances as a matter of law, depending upon the measure of income the trial court had used, which the court of appeals considered was not clear from the record. The court of appeals remanded the case to the trial court for recalculation of the payor spouse's income, including consideration of the issue of depreciation of assets as it related to income.

---

[1]Section 767.32, Stats., provides for a revision of, *inter alia,* judgments providing maintenance payments under sec. 767.26.

We affirm the court of appeals both as to the primary issue and the second issue.

\*   \*   \*   \*

The parties to this action William Hommel (Dr. Hommel) and Sharon Hommel (Mrs. Hommel), were divorced in August 1985 after a marriage of 23 years. At the time of the divorce, Dr. Hommel was a 59-year-old self-employed podiatrist, and Mrs. Hommel was not employed outside the home. By stipulation, the parties' marital estate was equally divided. Dr. Hommel received various items of real and personal property, including a number of business holdings. Mrs. Hommel was awarded furniture and household effects, the parties' residence, and a cash award of $265,000. The stipulation provided that Dr. Hommel pay the cash award to Mrs. Hommel in installments with $15,000 payable immediately upon the judgment of divorce and the balance of $250,000, along with interest at 9 percent per annum, payable in equal monthly payments amortized over a 15-year period.

In order to make his payments, Dr. Hommel sold portions of the marital estate that had been awarded to him. As he sold these assets, Dr. Hommel, apparently without objection from Mrs. Hommel, made advance lump-sum payments on his obligation to her, such that by May 1989, when the trial court issued its decision in the instant case, Dr. Hommel had paid $142,000 in principal on the obligation. Consequently, because of the interest on the unpaid remainder of the obligation, Dr. Hommel owed Mrs. Hommel interest of $11,970 for 1989.

The divorce stipulation further provided that Dr. Hommel was to pay Mrs. Hommel maintenance in the amount of $1,500 per month and pay child support in

the amount of $500 per month until the parties' youngest child reached 18 years of age in May 1988, when maintenance was to increase to $2,000 per month and child support was to end. The stipulation provided that the maintenance figures were based upon the parties' 1978 through 1984 tax returns, which revealed that Dr. Hommel earned approximately $62,000 annually from his podiatry practice. There was little or no net investment income during those years.

In December 1987, Dr. Hommel, then 63-years-old, sold his podiatry practice on an installment basis and began to collect Social Security payments, although he continued to work on a part-time basis. For the year 1988, the trial court found Dr. Hommel's total income to be $71,700. In reaching this figure, the court included Dr. Hommel's Social Security income, professional earnings, and investment income, less the value of the interest payments he made to Mrs. Hommel. In 1989, however, Dr. Hommel expected his total income to fall, and it was on the basis of this alleged fall in total income that he made his motion for a reduction in maintenance payments in this case.

Specifically, Dr. Hommel testified at the revision hearing that he intended to earn only $6,000 from his part-time employment and receive approximately $9,000 in Social Security income. He also was to receive $10,000 from the installment sale of his practice. Dr. Hommel asserted that, even including investment income of approximately $28,000, his 1989 income would total no more than $53,000, out of which amount he was required to pay the interest he owed Mrs. Hommel and also maintenance in the amount of $24,000 for the year.

Asserting that his alleged reduction in income in 1989 constituted a substantial change in circumstances, Dr. Hommel argued that when earnings are reduced

because of retirement, maintenance payments should be proportionately reduced or should cease altogether, citing *In re Marriage of Poindexter,* 142 Wis. 2d 517, 419 N.W.2d 223 (1988), and *In re Marriage of Olson,* 148 Wis. 2d 219, 435 N.W.2d 266 (Ct. App. 1988). In this connection, Dr. Hommel repeatedly referred to what he considered Mrs. Hommel's "wasting" of the assets she was awarded in the property division.

\* \* \* \*

██ Whether income from assets awarded in an equal property division should be considered in calculating a spouse's income for purposes of revising a maintenance award to the other spouse presents a question of law. Accordingly, the court decides the question independently and without deference to the decisions of the trial court and court of appeals. *Poindexter,* 142 Wis. 2d at 528–29.

██ While no statute or previous case law directly considers the question, it is recognized that an asset may not be considered both as marital property subject to division and as a factor in a party's future income for the purpose of determining maintenance. *See Kronforst v. Kronforst,* 21 Wis. 2d 54, 64, 123 N.W.2d 528 (1963); *In re Marriage of Kennedy v. Kennedy,* 145 Wis. 2d 219, 225–26, 426 N.W.2d 85 (Ct. App. 1988); *Overson v. Overson,* 125 Wis. 2d 13, 20, 370 N.W.2d 796 (Ct. App. 1985); *In re Marriage of Mack v. Mack,* 108 Wis. 2d 604, 609, 323 N.W.2d 153 (Ct. App. 1982). As the court of appeals indicated in *Marriage of Schinner v. Schinner,* 143 Wis. 2d 81, 100, 420 N.W.2d 381 (Ct. App. 1988), that utilization of an already divided property division

asset for purposes of support or maintenance is improper.

In *Mack,* 108 Wis. 2d at 606, the court of appeals, after holding that the fruits of a personal injury award made to one spouse prior to the divorce constituted marital property that was properly divided at the time of the divorce predominantly in favor of that spouse insofar as he was the source of the award, indicated that income from that portion of the award was available for purposes of maintenance payments to the other spouse. *Id.* at 609. However, as Dr. Hommel points out, *Mack* might be distinguished insofar as, unlike the instant case, it involved an unequal division of marital assets, and that fact may have affected the court of appeals in reaching its decision.

Another court of appeals decision, however, more arguably supports Mrs. Hommel's position. In *Pelot v. Pelot,* 116 Wis. 2d 339, 344, 342 N.W.2d 64 (Ct. App. 1983), there was a virtually equal division of marital assets according to which one spouse, the maintenance payor, was awarded, *inter alia,* a pension plan. After that spouse's retirement and consequent reduction in employment income, he filed a petition for reduction of maintenance. Questioning "whether the *Kronforst* rule is absolute," the court of appeals in effect held that after the payor spouse had received the full value of the pension plan, as determined at the time of the divorce, any further pension benefits could be considered as income available for maintenance purposes. *Id.* at 346.

While no holding in *Mack* or *Pelot* is directly relevant to the instant case, those cases taken together do suggest that, under circumstances such as are present here, income from a marital asset is available for maintenance purposes. Such an inference can also be drawn

from *Poindexter,* despite the assertion by Dr. Hommel that *Poindexter,* as well as *Olson,* favor his position.

In *Poindexter,* this court was faced with a post-divorce motion for a reduction in maintenance based upon the payor's substantial change in circumstances. As in the instant case, the parties' assets had been equally divided pursuant to a stipulation agreement. Subsequently, the payor spouse, like Dr. Hommel, brought a motion for reduction in maintenance based upon his retirement and consequent decreased employment income. There was no dispute as to whether the payor's total income was decreased so as to constitute some substantial change in circumstances. However, there were concerns that the payor, who had been transferring to his second wife some of his income-producing assets, the income from which was uncontestedly considered as available for maintenance purposes to his first wife, was doing so solely for the purpose of reducing the income he had available for maintenance. The court concluded that:

> [U]nder the very unusual circumstances such as those presented here, where a party has an ability to effect significant changes in assets and income available for maintenance and has done so on several occasions over a period of time, a percentage maintenance award is within a circuit court's discretion.

*Poindexter,* 142 Wis. 2d at 523.

From this conclusion, Dr. Hommel argues that anytime a maintenance payor's employment income decreases because of retirement, maintenance payments should be proportionately reduced. Dr. Hommel's argument fails. In *Poindexter,* unlike the instant case, it was clear that the payor's total income, comprised of his employment income as well as the income from his

assets available for maintenance purposes, had decreased so as to bring about a substantial change in circumstances. In contrast, in this case there is still a dispute as to whether Dr. Hommel's total income has decreased. Moreover, the instant case has not witnessed any dubious transfers of assets, which transfers were among the "very unusual circumstances" upon which the conclusion in *Poindexter* rested. Dr. Hommel's argument does not follow from *Poindexter*.

Nor does Dr. Hommel's argument follow from *Olson*. in *Olson*, 148 Wis. 2d at 220, the court of appeals determined that the trial court, in issuing a divorce judgment, did not abuse its discretion by requiring one of the former spouses to pay the other maintenance in the amount of 40 percent of his gross salary for ten years from the date of judgment. The payor spouse claimed that in not taking into account that he would be required to retire from his current employment within five years and might not be able to find equally remunerative employment elsewhere, the trial court abused its discretion.[2] The court of appeals upheld the trial court, noting that, following from its decision, the payor spouse would pay nothing in maintenance if he earned no employment income five years hence when he would be made to retire from his current employment. *Id.* at 222. There is nothing in *Olson* that supports Dr. Hommel's argument. *Olson* does not say that maintenance must be reduced simply because of a reduction in the payor's employment income and without reference to his total income.

---

[2]The payor spouse did not argue, however, that the proportionate maintenance award might be in conflict with *Poindexter* insofar as *Poindexter* limited its holding to the "very unusual circumstances such as those presented [there]," *Poindexter*, 142 Wis. 2d at 523. It is probably for this reason that the court of appeals did not address the issue.

If anything, *Poindexter* supports Mrs. Hommel's position insofar as the assets in question there were assets that resulted from the marital property division. While the history of the assets is unclear from the *Poindexter* opinion itself, Dr. Hommel has not contested Mrs. Hommel's assertion that the assets in *Poindexter* in fact were the result of the marital property division. We agree that *Poindexter* clearly allows the inference that income from such assets normally is available for purposes of maintenance. This is so because *Poindexter* went on to conclude that rental income from the assets in question was not available for purposes of the payor spouse's maintenance obligations to the first spouse only because under the circumstances of the case, the transferred assets, but for the Marital Property Act, would have been the solely owned property of the second wife. *Poindexter,* 142 Wis. 2d at 540–41. Thus, only under such circumstances was income from the assets not available for maintenance purposes. In other words, the clear inference is that, contrary to Dr. Hommel's argument, income from assets awarded pursuant to an equal property division is normally available for purposes of maintenance.

Such an inference is consistent with the legislative policy of allowing for support to the payee spouse in accord with the needs and earning capacity of the parties. *In re Marriage of LaRocque,* 139 Wis. 2d 23, 33, 406 N.W.2d 736 (1987), warrants a determination against Dr. Hommel and in favor of Mrs. Hommel as to the issue before this court. This determination also comports with a policy of not encouraging former spouses to retire from meaningful and productive employment prematurely. *See Poindexter,* 142 Wis. 2d at 547 (Steinmetz, J., concurring) (noting that it was not the ability of maintenance payor spouse to produce income that was reduced

but rather a reduction in his desire to produce income). In addition, the legislative policy indicated in *LaRocque,* 139 Wis. 2d at 33, that of ensuring a fair and equitable financial arrangement between the parties is not offended in any meaningful way by the conclusion in this case.

Thus, we hold that investment income from assets awarded to a spouse as part of an equal division of property pursuant to a divorce settlement generally can be included in calculating that spouse's income for purposes of revising a maintenance award to the payee spouse in accordance with sec. 767.32, Stats.

While Dr. Hommel suggested that Mrs. Hommel may have wasted her marital property division assets, he never made any allegation that Mrs. Hommel intentionally wasted any of those assets.[3] Had Dr. Hommel alleged and proven that Mrs. Hommel intentionally wasted the assets, the holding in this case as to this issue could be different. The frugality and wise investment by a person such as Dr. Hommel here should not be unfairly

---

[3]The trial court noted that while it considered Mrs. Hommel's expenditure of her assets to have been less than frugal, under the circumstances it was not the court's "job to sit in judgment upon her." In this connection, the court stated that:

> It reminds [the court] of . . . the Aesop fable of the grasshopper and the ant. Dr. Hommel has been like the ant. He preserved his assets, and Mrs. Hommel is like the grasshopper; she flips around from place to place and spends money as there were no end to it.

The court then reiterated that it was not in a position whereby it was "going to stop [Mrs. Hommel]," implying that was so because there was no allegation of intentional waste made against her (and, as the court added, no suggestion that she was incompetent).

penalized, *see Pelot,* 116 Wis. 2d at 346–47,[4] and intentional waste should not be rewarded.

■

As to the second issue, the court is faced with another question of law and therefore will review the question *de novo. Poindexter,* 142 Wis. 2d at 528–29. Thus, we give no deference to the decisions of the lower courts in determining whether, in calculating a spouse's income for maintenance purposes in accordance with sec. 767.32, Stats., a court should exclude from that figure what the payor spouse must transfer to the payee spouse as interest on a deferred cash property obligation.

This issue requires no more than summary treatment. The parties agreed at the time of the divorce that Dr. Hommel would make principal and interest payments to Mrs. Hommel for an extended period of time. In effect, Dr. Hommel is paying Mrs. Hommel for being able to hold that portion of the principal he has yet to turn over to her. This holding or use of principal by Dr. Hommel is in itself a certain form of "income" to him, and this "income" is not included in calculating his total income for maintenance purposes. Thus, it is only logical and reasonable that his interest payments to Mrs. Hommel not be excluded from his total income. The fact that

---

[4]The court of appeals noted this policy as the concern of plaintiff-appellant in *Pelot* in the context of determining that interest earned on a money market fund owned by the plaintiff-appellant was available for purposes of maintenance. *Pelot,* 116 Wis. 2d at 347–48. Although it is not apparent from the *Pelot* opinion, the record appears to show that the money market fund was the result of an inheritance of the plaintiff-appellant. Thus, because inheritances are not subject to marital property division, this determination of the court of appeals' decision in *Pelot* has no relevancy to this case, which involves not inherited assets but rather assets subject to marital property division.

these interest payments are considered income to Mrs. Hommel for purposes of her taxes or an expense to Dr. Hommel for purposes of his taxes does not affect the court's view of them for maintenance purposes. *See Kennedy,* 145 Wis. 2d at 226 (monies taxed as income are not necessarily income for determining maintenance issues).

Accordingly, we hold that in calculating a spouse's income for maintenance purposes in accordance with sec. 767.32, Stats., a court should not exclude from that figure the amount the maintenance payor spouse must transfer to the payee spouse as interest on a deferred cash property obligation.

Mrs. Hommel takes issue with the court of appeals findings that the evidence submitted at the motion for revision hearing was sufficient to show the income of the payor spouse for the year 1989. She did not, however, cross-appeal as required by sec. 809.62, Stats.,[5] and so her challenge to the remand of the court of appeals for recalculation of the payor spouse's income, including consideration of the issue of depreciation of assets as it related to income, is not before the court.

When a party fails to file a timely cross-appeal as to an issue, any argument the party subsequently makes in their brief as to that issue will be considered by this court on appeal only if the argument is in support of the

---

[5]Section 809.62(7), Stats., provides as follows:

**(7)**   A party who seeks a modification of an adverse decision of the court of appeals may file a petition for cross-review within the period for filing a petition for review with the supreme court, or 30 days after the filing of a petition for review by another party, whichever is later. A party seeking cross-review has the same rights and obligations as a party seeking review under ch. 809.

court of appeals holding, not, as here, where the argument is contrary to the court of appeals holding and order of remand. Because the issue has not been properly raised, the court will not consider it.

We hold that investment income from assets awarded to a spouse as part of an equal division of property pursuant to a divorce settlement can be included in calculating that spouse's income for purpose of request to revise a maintenance award to the other spouse. In addition, we hold that a court should in calculating a spouse's income for maintenance purposes not exclude interest payments on monies owed the payee pursuant to the settlement from the total income.

*By the Court.*—The decision of the court of appeals is affirmed.