IN RE the MARRIAGE OF: James DOWD, Petitioner-Respondent,

v.

Ellen DOWD, Respondent-Appellant.

Court of Appeals

*No. 91–1750. Submitted on briefs December 18, 1991.—Decided February 26, 1992.*

(Also reported in 481 N.W.2d 504.)

■■■■■■
■■■■■■
■■■■■■

On behalf of the respondent-appellant, the cause was submitted on the brief of *Robert J. LaBelle* and *Roland J. Steinle, Jr.* of Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Kathleen A. Olk* and *John C. Curran, Curran Law Offices* of Waukesha.

Before Brown, Anderson and Sundby, JJ.

ANDERSON, J.   Ellen Dowd appeals from an order reducing maintenance payments to her from $500 to $150 a month. Because we conclude that this was an abuse of discretion, we reverse the trial court.

Ellen and James were married in 1960 and divorced in 1984. The judgment of divorce resulted in the children residing with James. At the time of the divorce, James' annual income was $62,250 and Ellen's annual income was zero. The parties stipulated that James was to pay maintenance of $1000 a month until he paid to Ellen her share of the property division, which was in excess of $109,500. Ellen's share of the property division was placed in a conservatorship. Subsequent to Ellen's receipt of the property division, the stipulation provided that James' maintenance obligation was to be reduced to $500 a month. At the time of the divorce, James had a pension and profit-sharing plan (fund) with a present value of $107,408. The stipulation also provided that the fund was part of James' share of the property division

411

and James was required to make Ellen's health insurance payments.

In November 1990, James moved the trial court to terminate maintenance because of a substantial change in circumstances. James' income was reduced to $17,300 annually after he had a "negotiated leave taking" from his employer which was "not entirely voluntary." James was fifty-nine years old at the time of the hearing. The court found that Ellen's chronic manic-depressive condition made her unemployable. Ellen was drawing $800 a month from the trust and the trust principal was becoming depleted. The trust was depleted by approximately $71,000 since the trust was established. The court found that Ellen was living at a standard below that which she enjoyed during the marriage. The court found that the current value of James' fund was $300,000 and because of his retirement, he could withdraw any amount without incurring penalties.

In a decision dated February 1991, the trial court concluded that although there was a substantial change in circumstances, the financial condition of both parties did not justify any modification. The court stated that Ellen's need for maintenance outweighed James' change of circumstances. The court also stated that James did not establish that he would have to invade his property division to make the maintenance payments or to meet his own expenses. The court concluded that James did not meet his burden to show that he could not pay the monthly maintenance obligation.[1]

In March 1991, James moved the trial court to reopen the case for additional information on James' financial status. The court reopened the case and held a hearing. James' testimony presented four evidentiary matters

---

[1]The trial court found that James did not leave his employment in order to avoid maintenance payments.

to the court: (1) his income was $1442 a month and his expenses were $3679 a month; (2) his current wife had trust income available of approximately $1500 monthly; (3) the fund was now worth $325,000 and the annual interest on the fund was approximately $22,000; and, (4) he could withdraw the interest without reducing the principal and without penalties, but his financial planners advised him not to withdraw the interest in order to maximize the return.

The trial court wrote in its decision dated May 1991 that because of the failure of the trust to support Ellen, James is being asked to pay maintenance twice. The court believed that James should be given the opportunity to place himself in an "optimum financial situation." The court interpreted James' request as a "reprieve" and that such reprieve was appropriate.

The trial court reduced James' monthly maintenance payment to $150 and ordered him to continue Ellen's health insurance payments. The court ordered the financial conditions of both parties reviewed when James begins receiving social security benefits in 1993. The court stated that even though Ellen's assets were quickly depleting, James will be in a better position in the future to pay her maintenance.

■ The issue is whether the trial court abused its discretion when it reduced James' maintenance obligation on the basis that he should be able to place himself in an optimum financial position. The modification of a maintenance award involves the exercise of discretion. *Poindexter v. Poindexter,* 142 Wis. 2d 517, 531, 419 N.W.2d 223, 229 (1988).

■ One of the relevant factors the trial court examines in a motion to modify maintenance is the payor's ability

to pay. *See id.* at 530, 419 N.W.2d at 228. We must, therefore, determine to what extent James' fund, provided to him as part of the property settlement, may be used to determine his ability to pay. This involves a question of law which we review independently. *See id.* at 528-29, 419 N.W.2d at 228.

The Wisconsin Supreme Court broadly addressed this issue in *Hommel v. Hommel,* 162 Wis. 2d 782, 471 N.W.2d 1 (1991). The court held that:

> [I]nvestment income from assets awarded to a spouse as part of an equal division of property pursuant to a divorce settlement generally can be included in calculating that spouse's income for purposes of revising a maintenance award to the payee spouse in accordance with sec. 767.32, Stats.

*Id.* at 793, 471 N.W.2d at 5.

Although the *Hommel* court referred to investments generally, we conclude that its holding applies equally to the case before us. The fund was awarded to James as part of the property division. Neither party claims that the property division was unequal. James testified that the investment income of the fund is approximately $22,000 annually, that he can withdraw that amount without penalty, and that he can withdraw the interest without tapping into the principal. James has the option of either withdrawing from the fund or having the annual interest reinvested. There is nothing that distinguishes James' pension fund from other types of investments normally divided as part of a property division. Therefore, we conclude that *Hommel* controls and that the annual interest from James' fund may be included in calculating his income for maintenance modification purposes.

Allowing the fund's interest to be considered as income is consistent with the rule that all sources of income, ordinary and extraordinary, are to be considered when establishing or modifying maintenance. *See Schinner v. Schinner,* 143 Wis. 2d 81, 104, 420 N.W.2d 381, 390 (Ct. App. 1988). Our decision is also consistent with *Hommel's* policy concerns: to provide support to the payee spouse in accord with the needs and earning capacity of the parties, to encourage former spouses not to retire prematurely, and to ensure a fair and equitable financial arrangement between the parties. *Hommel,* 162 Wis. 2d at 792–93, 471 N.W.2d at 5.

James argues that *Pelot v. Pelot,* 116 Wis. 2d 339, 342 N.W.2d 64 (Ct. App. 1983), should control. We disagree. The effect of *Pelot's* holding is that after the payor spouse receives the full value of a pension plan, as determined at the time of the divorce, any further pension benefits can be considered as income available for maintenance purposes. *See Hommel,* 162 Wis. 2d at 789, 471 N.W.2d at 4. James argues that until he receives $107,408 from the fund, the fund cannot be considered income when modifying the maintenance obligation.

We conclude that *Pelot* does not apply to the facts of this case. In *Pelot,* the monthly pension benefits the payor was receiving were from the principal of the pension and were not a distribution of the annual interest earned on the principal. *See Pelot,* 116 Wis. 2d at 341–42, 342 N.W.2d at 65–66. The court held that the pension itself cannot be considered income to determine the payor's ability to pay.

In this case, however, the fund itself is not being used to determine James' ability to pay. Nor is the increase in the amount of principal being used to determine his ability to pay. James retains the original $107,408, plus the $217,592 increase in principal. The

amount used to determine his ability to pay in this case is limited to the interest the fund earns on a yearly basis. James is not being deprived of the full value of the plan awarded to him at the time of the divorce. Furthermore, the fund is not being jeopardized by keeping the principal intact and only withdrawing the interest. Therefore, *Pelot* does not apply.[2]

We next must decide if the trial court abused its discretion in decreasing the maintenance payments to Ellen from $500 to $150 a month. An exercise of discretion must be based on the facts appearing in the record and the appropriate and applicable law, as well as being the product of a rational mental process. *Poindexter,* 142 Wis. 2d at 531, 419 N.W.2d at 229. When modifying maintenance awards, the court must consider the same factors governing the original determination of maintenance set forth in sec. 767.26, Stats. *Poindexter,* 142 Wis. 2d at 531, 419 N.W.2d at 229. We conclude that the trial court abused its discretion in modifying the maintenance obligation.

The basis for the trial court's decision to modify the maintenance obligation was to place James in an "optimum financial situation." The trial court believed that James' financial decision to reinvest the interest outweighed Ellen's deteriorating source of income and the fact that she had a standard of living below the standard she had while married. The court found that Ellen was chronically manic-depressive and unemployable. The court's decision effectively forces Ellen to exhaust her share of the property division to provide her support.

---

[2]We do not decide to what extent the increase in principal, apart from the interest, is available for the determination of the ability to pay after the payor begins receiving pension benefits.

■ We believe that this is an abuse of discretion because the trial court did not give full consideration to the support objective of maintenance. *See LaRocque v. LaRocque,* 139 Wis. 2d 23, 33, 406 N.W.2d 736, 740 (1987). Reducing the maintenance obligation in order to place the payor in a better position at the expense of the payee ignores the principle that a spouse should not be forced to invade the property division in order to live while the other does not. *See id.* at 34–35, 406 N.W.2d at 740; *see also Kennedy v. Kennedy,* 145 Wis. 2d 219, 226–27, 426 N.W.2d 85, 88 (Ct. App. 1988). This is particularly true in this case because requiring James to utilize the fund's interest does not require him to invade his share of the property division.

Furthermore, the support objective of maintenance is not satisfied when the payee spouse is not living at the standard of living reasonably comparable to that enjoyed during the marriage and the payor spouse is. *See LaRocque,* 139 Wis. 2d at 35, 406 N.W.2d at 740–41. The court found that Ellen was living at a standard of living below that which she enjoyed during the marriage. Despite this, the court reduced her maintenance by $350 a month so that James could place himself in an optimal financial situation. We conclude that the court abused its discretion by ignoring this goal of maintenance.

■ The trial court inappropriately considered that James' timely compliance with the provisions of the property division, faithful payment of maintenance and medical insurance premiums, and his child support obligations were all equities that bolstered a respite from his maintenance obligations. Maintenance payments may be modified only upon a finding of change in the financial circumstances of the parties and not as a reward to the

obligor for his or her required compliance with the judgment of divorce. *See Popp v. Popp,* 146 Wis. 2d 778, 801, 432 N.W.2d 600, 608 (Ct. App. 1988).

Finally, in support of its determination that James was entitled to a reprieve from his maintenance obligation, the trial court held: "In effect because of the failure of the trust to support Ellen [James] will be asked to pay maintenance twice." The trial court fails to explain how the dissipation of Ellen's property division subjects James to double maintenance payments.

Therefore, we conclude that James' interest on the fund may be included in calculating income for purposes of determining his ability to pay maintenance obligations. We also conclude that the trial court abused its discretion in modifying the maintenance obligation. We reverse the order.

*By the Court.*—Order reversed.

BROWN, J. *(dissenting).* I respectfully dissent for three reasons. First, readers of the opinion are obliged to assume a trial court finding that interest income earned on the pension and profit-sharing asset was unavailable to pay maintenance. Why else go into extended discussion of the subject? Such an assumption is unfair to the trial court since it never addressed the issue, but assumed that the interest *was* available for maintenance purposes.[1] I believe, therefore, that the first part of the opinion is totally unnecessary.

Second, I have problems with the overly broad language of the first part of the opinion. In discussing James' pension, the opinion states that "[t]here is nothing that distinguishes James' pension fund from other

---

[1] In fact, the trial court opined that *Pelot v. Pelot,* 116 Wis. 2d 339, 342 N.W.2d 64 (Ct. App. 1983), did not apply to the facts in this case.

types of investments normally divided as part of a property division." Majority op. at 414, 481 N.W.2d at 506. I imagine that what the majority means to say is that interest income from a pension awarded as part of property division should be available for maintenance just as interest from a CD or a savings account is.

I think that the language is overly broad for the following reason. Normally, interest from such things as CDs and savings accounts is immediately available as income to the payee. Thus, the interest is "income" in the true sense of the word. That is why the supreme court in *Hommel v. Hommel,* 162 Wis. 2d 782, 471 N.W.2d 1 (1991), had no hesitancy in deciding that interest of that type is available for maintenance. However, pensions and profit-sharing plans are different animals. Although interest may accumulate and roll over on an annual basis in these plans, no money is forthcoming to the employee until the plan vests and until the employee is entitled to begin receiving the benefits under the plan. In other words, no interest is available as income, at least until benefits begin.

I understand that we do not have that situation before us. Ellen is not attempting to obtain maintenance based upon interest that was rolled over into the pension before James' retirement. However, that is just the point. The language of the majority opinion could be used by some enterprising legal mind for a proposition that is not presently before this court. We should not be giving the impression that *any* interest earned on a pension after property division is available for maintenance. While I acknowledge that footnote 2 of the majority opinion attempts to circumscribe such a notion, I think it is necessary to point out that the language in the body of the opinion is overly broad and not germane to the narrow issue before us.

419

Third, I do not believe that the trial court abused its discretion in modifying the maintenance obligation. Contrary to the majority's opinion, I believe that the trial court gave full consideration to the support objective of maintenance. I fully support our case law decreeing that one spouse should not be forced to invade the property division in order to live while the other does not. The majority, however, has decided that this is the effect of the trial court's order.

I am convinced, however, that the trial court took into consideration the entire record before coming to the conclusion it did. The trust for Ellen was set up pursuant to stipulation by the parties. It provided for James to fund a trust to provide for Ellen's care and welfare. He did so. Although it was denominated as property division, I do not believe appellate courts should be so blind as to ignore the purpose of a legally created entitlement because of the legal moniker applied to that entitlement. As pointed out in many of our appellate opinions, courts are to consider maintenance and property division in tandem, not as separate entities. I conclude that Ellen was not "forced to invade the property division." Majority op. at 417, 481 N.W.2d at 507. Rather, the trust was set up to provide for and support Ellen.

The trial court recognized that the trust is dwindling. This does not mean, however, that the trust is not presently able to serve its purpose—Ellen's support. I believe that the trial court recognized just that. The trial court deemed that the support objective could be better met by lowering James' present maintenance obligation, thus making it necessary that the trust temporarily bear the major responsibility for Ellen's support. This would allow the pension to increase in value, thereby putting James in a much stronger position to provide for Ellen's maintenance through his income in the near future. I

420

believe this to be the reasoning of the trial court, based upon the following statements made by the trial court, which I recite here:

> James is asking for a suspension of maintenance *on a temporary basis* to allow his financial planning . . .. [A]bout the time James receives social security will be the time that his financial planning ripens and his financial picture with the tax considerations will be better than it is at present. *A resumption of maintenance at a later time would find him in a better position to pay the support that is needed by Ellen.* . . . James asks the court essentially for a reprieve. And the court finds that it is appropriate.
>
> . . ..
> The court finds that to continue to force James to pay maintenance at the original level will force him to incur unduly harsh consequences for the benefit that is reaped by Ellen. Her monies are already dwindling, even at the current maintenance level. While the court's order may hasten their exhaustion, on the other hand James' funds are working well and hard for him and will place him in a better position in the future to fund maintenance. [Emphasis added.]

Contrary to the majority opinion, I am convinced that the trial court had the support objective of maintenance foremost in its mind in rendering its decision. The court was merely carrying out the original intent of the parties at the time they were divorced, which was for James to provide and care for Ellen's support. Permitting it to come now from the fast-depleting trust, funded by James, and, in the near future, to come from a financially healthier James, is a discretionary call for the trial

court. In my view, the court's exercise of that call did not amount to an abuse of discretion. I dissent.