IN RE the MARRIAGE OF: Gerald D. PLONKA, Petitioner-Respondent,

v.

Arline S. PLONKA, Respondent-Appellant.

Court of Appeals

*No. 91–3021. Submitted on briefs February 3, 1993.—Decided May 18, 1993.*

(Also reported in 501 N.W.2d 871.)

196

197

For the respondent-appellant the cause was submitted on the briefs of *Law Offices of Podell & Podell* by *Peggy L. Podell*, of Milwaukee.

For the petitioner-respondent the cause was submitted on the briefs of *Ronald J. Jaskolski, S.C.*, by *Ronald J. Jaskolski* and *Jane A. Edgar*, of Milwaukee.

Before Wedemeyer, P.J., Sullivan and Fine, JJ.

WEDEMEYER, P.J. Arline S. Plonka appeals from an order modifying maintenance in a judgment of divorce. Arline asserts two instances of trial court error: (1) the trial court erroneously exercised its discretion in establishing limited term maintenance; and (2) the trial court failed to consider all available sources of income in determining maintenance. Because the trial court erroneously exercised its discretion in establishing limited term maintenance, and because the trial court did not consider all available sources of income in determining maintenance, we reverse.

## I. BACKGROUND

On July 9, 1987, Gerald and Arline Plonka obtained an uncontested divorce. As part of the proceedings they executed a final stipulation and, in so doing, resolved all issues of maintenance and property division.

At the time of the divorce, Gerald had a gross income of $4,465 per month. Arline was not employed.

The judgment of divorce provided maintenance for Arline of $1,150 per month. As for the division of the marital estate, Gerald received the family summer home in Oneida County, one-half of his accrued pension plan benefits from Allen-Bradley Co., an individual retirement account, his profit sharing plan and an employer savings plan. Arline was awarded the other half of the accrued pension plan benefits, the homestead in St. Francis, and cash in the amount of $34,000. To meet his cash obligation to Arline, Gerald obtained a mortgage against the summer home. On May 15, 1991, in anticipation of his retirement, Gerald filed a motion requesting termination of Arline's maintenance. He based his motion on a substantial change in circumstances. Arline challenged the motion.

It is uncontroverted that Gerald could have retired in late 1989, but chose not to do so until May 31, 1991. Because of his continued period of employment, Gerald's accrued monthly benefit plan increased. Two days before his retirement, Gerald remarried.

Arline, subsequent to the divorce, obtained a part-time job as a dishwasher at Northwestern Mutual Life Insurance Company at which she earned $900 per month. She also received approximately $500 per month from SSI for the care of the parties' twenty-five-year-old developmentally disabled son.

After a family court commissioner hearing on the motion to modify, the results of which were unsatisfactory to both parties, a *de novo* hearing was held before the trial court. The trial court found that there had been a substantial change in Gerald's circumstances and modified the judgment by granting Arline limited term maintenance of $500 per month for six months. In the process of its determination, the trial court found that Gerald's pension plan had been divided in half

pursuant to the final stipulation of the parties. Arline now appeals from the order modifying the judgment of divorce.

## II. DISCUSSION

Arline first claims that the trial court, in modifying the maintenance award to a limited term, erroneously exercised its discretion by failing to address proper and relevant factors.[1]

The determination of the amount and duration of maintenance is entrusted to the sound discretion of the trial court and an appellate court will not disturb the determination unless the trial court erroneously exercised its discretion. *LaRocque v. LaRocque*, 139 Wis. 2d 23, 27, 406 N.W.2d 736, 737 (1987). An erroneous exercise of discretion occurs when the trial court fails to consider relevant factors, bases its award on a factual error, or grants an excessive or inadequate award. *DeLaMatter v. DeLaMatter*, 151 Wis. 2d 576, 582–83, 445 N.W.2d 676, 679 (Ct. App. 1989).

As noted by the supreme court in *LaRocque*, when deciding whether to grant limited term maintenance the trial court must consider:

---

[1] The supreme court has noted the following about maintenance:

The payment of maintenance is not to be viewed as a permanent annuity. Rather, such payment is designed to maintain a party at an appropriate standard of living, under the facts and circumstances of the individual case, until the party exercising reasonable diligence has reached a level of income where maintenance is no longer necessary.

*Vander Perren v. Vander Perren*, 105 Wis. 2d 219, 230, 313 N.W.2d 813, 818 (1982).

the ability of the recipient spouse to become self-supporting by the end of the maintenance period at a standard of living reasonably similar to that enjoyed before divorce; the ability of the payor spouse to continue the obligation of support for an indefinite time; and the need for the court to continue jurisdiction regarding maintenance.

*LaRocque,* 139 Wis. 2d at 41, 406 N.W.2d at 743. The trial court is guided in its decision-making process by the factors set forth in sec. 767.26, Stats.[2] *See Trattles v. Trattles,* 126 Wis. 2d 219, 228, 376 N.W.2d 379, 384 (Ct. App. 1985).

Initially, we note that Arline takes issue not with the reduced amount of $500 maintenance, but rather, with the termination date of April 1, 1992. Therefore, we focus only on the propriety of the trial court's rationale in fixing limited term maintenance. We observe also, from the oral decision of the trial court, that two considerations weighed heavily in its resolution of the maintenance modification request: (1) the efforts of Arline to become self-supporting; and (2) the nature of the division of Gerald's employee benefit plan.

---

[2] Section 767.26, Stats., states, in relevant part, that the trial court may grant an order requiring maintenance after considering: (1) length of marriage; (2) age and physical and emotional health of parties; (3) division of property made under sec. 767.255, Stats.; (4) educational level of the parties; (5) earning capacity of the party seeking maintenance; (6) feasibility that the party making the maintenance can become self-supporting at a standard reasonably comparable to that enjoyed during the marriage; (7) tax consequences; (8) any mutual agreements made prior to or during the marriage; (9) any contribution by one party to the education, training or increased earning capacity of the other; and (10) such other factors as the court deems relevant to the inquiry.

The trial court's analysis and characterization of Arline's efforts to become more self-supporting is essentially based on her testimony during cross examination. At the time of the trial court hearing Arline worked at Northwestern Mutual Life Insurance Company as a temporary dishwasher twelve and one-half hours per week, earning $7.95 per hour, amounting to $427 per week in gross wages.[3] Her net take home per month was $900. Arline indicated that she had not applied for work in another capacity. Arline also admitted that she had not sought additional hours or higher wages from her present employer because, in her opinion, Northwestern "isn't a place that you do that . . . ." Arline testified that she had a carpal tunnel condition in both of her arms that might require additional medical attention in the near future. Finally, Arline testified that she received approximately $500 per month from SSI for the care of the parties' son who is afflicted by Downs' Syndrome.

The trial court ruled that Arline had the mental, physical and emotional qualities to enter the job market and support herself. Further, the trial court found Arline's reasons for not seeking enhanced employment unsatisfactory. Thus, the trial court concluded that on April 1, 1992, Arline's maintenance was to cease.

The supreme court has cautioned that trial courts must act carefully when determining a maintenance termination date.

> Because limited-term maintenance is relatively inflexible and final, the circuit court must

---

[3] It should be noted that Arline sought employment of her own accord. She had not been admonished at any point in the divorce proceedings to "go out and find work."

> take particular care to be realistic about the recipient spouse's future earning capacity. The circuit court must not prematurely relieve a payor spouse of a support obligation lest a needy former spouse become the obligation of the taxpayers.

*LaRocque,* 139 Wis. 2d at 41, 406 N.W.2d at 743. We realize that this determination is an act of discretion by the trial court. The exercise of this discretion, however, is not synonymous with unfettered decision-making.

In the present case, the trial court assumed, without facts of record, that a fifty-nine-year-old woman without a high school diploma, was a fit person to be employed eight hours a day, five days a week, at minimum wage. Further, by necessity, the court found that full-time employment would not have a substantially adverse effect on Arline even though she was also caring for the needs of her twenty-five-year-old Downs' Syndrome son. Based on analogy only to the standard unemployment compensation term, the trial court then set a terminal date for the maintenance at six months. A search of the record reveals no evidence substantiating Arline's earning capacity or her ability to obtain full-time employment in the six-month time frame required by the trial court. In this regard we conclude that the trial court erroneously exercised its discretion.

Arline next claims that the trial court erred in its modification of maintenance by not considering two new factors: (1) Gerald's accrued benefit payments from his pension fund had increased since the date of divorce; and (2) because of early retirement, Gerald

was receiving a temporary subsidy allowance from his former employer.[4]

In *Hommel v. Hommel*, 162 Wis. 2d 782, 784–85, 471 N.W.2d 1, 1–2 (1991), the supreme court examined whether income from assets previously awarded in an equal division of property should be considered in a subsequent calculation of a spouse's income for purposes of reviewing a maintenance award to the other party.[5] The *Hommel* court concluded that investment income from assets awarded to a spouse as part of a divorce settlement can be included in calculating that spouse's income for purposes of revising a maintenance award. *Id.* at 793, 471 N.W.2d at 5. In our judgment, the significance of the *Hommel* decision rests in its stated rationale:

> [I]ncome from assets awarded pursuant to an equal property division is normally available for purposes of maintenance.
>
> Such an inference is consistent with the legislative policy of allowing for support to the payee spouse in accord with the needs and earning capacity of the parties. *In re Marriage of LaRocque*, warrants a determination against Dr. Hommel and

---

[4] This temporary supplement for early retirement is paid to Gerald until May 1, 1995, when he will become eligible for social security benefits.

[5] Both parties also direct our attention to the case of *Pelot v. Pelot*, 116 Wis. 2d 339, 342 N.W.2d 64 (Ct. App. 1983). In *Pelot* we noted that "[t]he extent to which pension payments may be considered in post-divorce proceedings is an open question." *Id.* at 343, 342 N.W.2d at 66. We went on to hold that "if the value of a pension fund is included in the property division, the court may consider it when making a maintenance award, although it must be considered differently from property which can be presently enjoyed." *Id.* at 345, 342 N.W.2d at 67.

in favor of Mrs. Hommel as to the issue before this court. This determination also comports with a policy of not encouraging former spouses to retire from meaningful and productive employment prematurely. In addition, the legislative policy indicated in *LaRocque*, . . . of ensuring a fair and equitable financial arrangement between the parties is not offended in any meaningful way by the conclusion in this case.

*Id.* at 792–93, 471 N.W.2d at 5 (citations omitted).

We conclude, as a logical extension to the *Hommel* rationale, that when a post-divorce motion for reduction in maintenance is presented, the nature and amount of current income-producing assets should be freshly examined together with any new post-divorce sources of income. When undertaking such an examination, the trial court must consider the reasons that form the basis for the allocation of assets in the original division of the estate. With such an analysis, the desired results of sec. 767.26, Stats., as enhanced by the fairness and equitable doctrine of *LaRocque*, will be more readily attained.

Doubtless, Gerald's total sources of income decreased from those existing at the date of divorce. However, the trial court failed to consider the increased benefit payments that Gerald is now receiving, as well as the supplemental pre-Social Security payments that are supplied to him by his employer.

We have carefully reviewed the trial court's oral decision modifying Arline's maintenance. We find no evidence to support the speculative conclusion that Arline could become self-supporting in six months. Furthermore, the comments of the trial court demon-

strate it did not appropriately consider all of Gerald's sources of income. In light of the foregoing, we conclude that the trial court's decision to modify the maintenance by setting a fixed term was an erroneous exercise of discretion. We reverse and remand for the purposes of re-examining the modification of maintenance in keeping with the contents of this decision.

*By the Court.*—Order reversed and cause remanded with directions.