In re the Marriage of:

Karen I. Olski, Petitioner-Respondent,

v.

Robert J. Olski, Respondent-Appellant.

Supreme Court

*No. 93–3332–FT. Oral argument October 5, 1995.—Decided December 5, 1995.*

(Also reported in 540 N.W.2d 412.)

For the respondent-appellant there was a brief by *Jeffrey D. Berlin* and *Spector & Berlin, S.C.*, Milwaukee and oral argument by *Jeffrey D. Berlin* and *Rebecca Boyle*.

For the petitioner-respondent there was a brief by *Daniel J. Weiss* and *Daniel J. Weiss, S.C.*, Milwaukee and oral argument by *James K. Jaskolski*, Milwaukee.

SHIRLEY S. ABRAHAMSON, J.    Robert J. Olski appeals from an order of the circuit court for Milwaukee County, Francis T. Wasielewski, judge, requiring him to make maintenance payments of $300 per month to his former wife, Karen I. Olski. The appeal is before

the court on certification from the court of appeals pursuant to Wis. Stat. § (Rule) 809.61 (1993-94).

The question of law presented on appeal is whether any receipts from an employee spouse's pension plan may be considered as income available for post-divorce maintenance payments if the value of the pension was awarded the employee spouse in a property division at divorce.

Robert J. Olski, the employee spouse (the husband), contends that it is "double-counting" to consider a pension plan both as an asset in the property division and as income for post-divorce maintenance payments. To the husband, the pension benefit is a stream of payments which was capitalized and treated as an asset for property division at divorce and which should not then be treated as income for post-divorce maintenance purposes.

Karen I. Olski (the wife), while conceding that an asset cannot be counted twice, once for property division and a second time for maintenance, asserts that the pension has two components, one relating to the monthly benefits earned and valued at the divorce and another relating to benefits earned subsequent to the divorce. She contends that because the latter benefits were acquired after the divorce they were not accounted for in the property division and that they now represent a stream of income available for maintenance.

Noting that the husband had continued to work after the divorce, the circuit court concluded that a substantial portion of the husband's pension was earned subsequent to the divorce. Therefore, the circuit court concluded, that portion of the receipts had not been accounted for in the valuation of the pension plan

240

at divorce and should be available as income for post-divorce maintenance.

We agree with the circuit court. We conclude that it is not double-counting to consider the portion of the pension earned subsequent to the divorce as income available for post-divorce maintenance obligations. Therefore we affirm the order of the circuit court.

## I.

Karen and Robert Olski were married in 1959. After 25 years of marriage, the couple was legally separated in 1984 and then divorced in 1985. At that time, the wife earned a gross monthly salary of $645 working as a part-time secretary for a church. The husband earned a gross income of approximately $2,900 a month working for Miller Brewing Company.

In the stipulated property division set forth in the divorce judgment, the husband was awarded his Miller Brewing pension, which was then valued at $11,355. The wife was awarded other property and, according to the judgment, was divested of all right, title and interest in the husband's pension.

The divorce judgment required the husband to pay $1,150 per month in family support until the younger of the couple's two children reached majority in 1986. He was then to pay $900 per month to the wife in maintenance through April 30, 1989. In March of 1989 the wife sought modification of the maintenance award to continue maintenance beyond April 30, 1989.

Pursuant to stipulation, the maintenance was reduced to $600 per month. The parties agreed that if the husband retired or if disability prevented either party's gainful employment, this change in circumstances would be sufficient to serve as a basis for "a modification or termination of maintenance." But the

parties also agreed that either party's "voluntary termination of employment" would not constitute a change of circumstances warranting such a modification. Finally, the parties agreed that the question of whether the husband's pension represented income, property or "a combination thereof" for purposes of maintenance would remain an open question concerning which the parties would "be free to argue" at a later date.

In 1992, at the age of 55, the husband accepted voluntary early retirement in exchange for incentive benefits, including an additional five-year credit to his pension. Thus, although the husband had completed only 36 years of service, he was credited with 41 years.[1]

After retirement, the husband received $2,700 in monthly payments from his pension, which was his only source of support; the wife at that point was earning $1,045 per month as a church secretary. The husband sought a court order terminating his $600 monthly maintenance payments. The husband argued that his sole source of support was from the pension awarded to him in the property division at divorce and that his pension receipts were not income available for maintenance.

In light of the couple's 25-year marriage, the parties' ages and the wide disparity in their monthly incomes, the circuit court rejected the husband's request for termination of his maintenance obligation. Noting the husband's decrease in gross income from

---

[1] If the husband had retired at age 65 in 2002, his pension benefits would have been based on 46 years of actually completed service.

$4,300 to $2,700 per month, the circuit court reduced that obligation from $600 to $300 per month.[2]

## II.

We now address the question of whether any receipts from a pension plan awarded in a divorce judgment to an employee spouse may be considered income available to that spouse for payment of post-divorce maintenance.

More than 30 years ago, this court made clear that when an employee spouse's profit-sharing trust is awarded that spouse as an asset in a property division, a circuit court may not consider that spouse's receipts from the trust as income available for maintenance after divorce. *Kronforst v. Kronforst*, 21 Wis. 2d 54, 123 N.W.2d 528 (1963). Likening the employee spouse's profit-sharing trust to a bank deposit, the court stated:

> We view the matter no differently than if the $9,749 [the value of the employee spouse's interest in the trust] had constituted cash in a bank deposit in defendant's name. Such an asset cannot be included as a principal asset in making division of the estate and then also as an income item to be considered in awarding alimony.

[2] The determination of the amount and duration of maintenance is entrusted to the sound discretion of the circuit court. An appellate court will not disturb a circuit court's decision unless the circuit court erroneously exercised its discretion. An erroneous exercise of discretion occurs when a circuit court fails to consider relevant factors, bases its award on factual errors, makes an error of law, or grants an excessive or inadequate award. On reviewing the circuit court's exercise of discretion, this court decides any question of law independently. *Hommel v. Hommel*, 162 Wis. 2d 782, 788, 471 N.W.2d 1 (1991).

*Kronforst*, 21 Wis. 2d at 64.

In *Kronforst*, there was no expectation that the employee spouse would increase his interest in the profit-sharing trust because he was disabled, was on an extended leave of absence and was unlikely to return to work. Under these circumstances the court noted that the trustees of his pension were likely to consider his severance as permanent, thereby precluding further increases in his interest in the trust.

Hence while *Kronforst* stands for the proposition that a retirement benefit should not be double-counted, it does not preclude the possibility that increases in the retirement benefit because of post-divorce employment would be available for post-divorce maintenance.[3] Increases in retirement benefits to an employee spouse because of post-divorce employment would not ordinarily be included in a division of property at divorce, because they are not part of the property subject to such division. *Steinke v. Steinke*, 126 Wis. 2d 372, 380, 376 N.W.2d 839 (1985).[4] As the court has explained,

---

[3] In *Steinke v. Steinke*, 126 Wis. 2d 372, 376 N.W.2d 839 (1985), the court explained that "*Kronforst* only established the rule prohibiting the double-counting of an asset, once in the property division and once in the maintenance award." *Steinke* 126 Wis. 2d at 382.

[4] *See also* J. Thomas Oldham, *Divorce, Separation and the Division of Property* 7-94 (1987) (those courts prohibiting double-counting do not consider it improper to include pension rights earned after divorce as available for possible maintenance because such rights would not have been included in initial property division); Brett R. Turner, *Equitable Distribution of Property* 343-44, 354 (2d ed. 1994) (retirement benefits earned during the marriage should be treated as marital property, while those earned after the divorce should be classified as separate property available for maintenance).

only that part of the retirement benefits attributable to the marriage should be considered in the property division, and "any contributions to the retirement fund after the divorce, whether made by employer or employee, would not be assets of the marital estate subject to division." *Bloomer v. Bloomer*, 84 Wis. 2d 124, 127 n.1, 267 N.W.2d 235 (1978).[5] The court has further explained that "because of the likelihood of future contributions to the fund . . . the fund should be treated as if it were two funds, with only that part of the fund attributable to the marriage being considered and divided." *Bloomer*, 84 Wis. 2d at 127 n.1.

---

Relying on the language of the stipulation and judgment that the wife was divested of all right, title and interest in the pension, the husband argues that the wife waived any interest in his pension benefits. We conclude, as did the circuit court, that this divestment language means that the wife waived her rights only to that portion of the pension benefits included in the property division.

[5] *See also Ably v. Ably*, 155 Wis. 2d 286, 292, 455 N.W.2d 632 (Ct. App. 1990) (treating early retirement inducement as separate from marital property because it did not exist until after the parties were separated); *Pelot v. Pelot*, 116 Wis. 2d 339, 342 N.W.2d 64 (Ct. App. 1983) (holding that once an employee spouse has received pension receipts equivalent to full value of the portion of the pension awarded him in divorce judgment, additional receipts are available for maintenance); *Holbrook v. Holbrook*, 103 Wis. 2d 327, 336-38 nn.17-18, 309 N.W.2d 343 (Ct. App. 1981) (discussing how to value that portion of retirement benefits earned during marriage in order to effect a proper division of property upon divorce); *Selchert v. Selchert*, 90 Wis. 2d 1, 11, 280 N.W.2d 293 (Ct. App. 1979) (upholding award of 50% of pension receipts to nonemployee spouse as her portion of marital property on the explicit assumption that pension receipts to which employee spouse was entitled would not be altered by additional post-divorce employment).

The court has recently examined the distinction recognized in *Bloomer* as it applies to income generated after divorce by assets divided at divorce. In *Hommel v. Hommel*, 162 Wis. 2d 782, 471 N.W.2d 1 (1991), the court concluded that investment income from assets awarded as part of the division of property at divorce could be included in calculating the payor spouse's income for purposes of revising the maintenance award. *Hommel*, 162 Wis. 2d at 783, 789, 796.

Both parties rely on *Hommel*. The husband argues that *Hommel* supports his position because pension benefits are not "income from an asset," but rather indistinguishable from the asset itself. The husband maintains that since a pension is no more than a stream of payments capitalized and treated as an asset for property division, the pension cannot also be treated as income for maintenance purposes.

The wife, conversely, claims that *Hommel* supports her position. She contends that just as the post-divorce interest earned on investments represents a stream of income acquired after divorce, post-divorce increases in the husband's pension plan which were not accounted for in the property division also represent a stream of income acquired subsequent to divorce.[6]

Consequently, the wife also relies on *Plonka v. Plonka*, 177 Wis. 2d 196, 501 N.W.2d 871 (Ct.App. 1993). In *Plonka*, one-half of the employee spouse's pension plan benefit was awarded each spouse in the property division. *Plonka*, 177 Wis. 2d at 199. Because the employee spouse continued working, however, the benefit payments from his pension plan increased after

---

[6] The rationale of *Hommel* was applied to pension funds in *Dowd v. Dowd*, 167 Wis. 2d 409, 481 N.W.2d 504 (Ct. App. 1992). The court of appeals considered the interest the fund earned on a yearly basis as income available for maintenance.

the parties' divorce. *Plonka*, 177 Wis. 2d at 203. Stating that its holding represented a "logical extension to the *Hommel* rationale," the court of appeals held that when a post-divorce motion for reduction in maintenance is presented, "the nature and amount of current income-producing assets should be freshly examined together with any new post-divorce sources of income." *Plonka*, 177 Wis. 2d at 205.

The wife in the present case does not ask this court to examine anew the nature and amount of that portion of the husband's current income-producing assets already distributed in the property division at divorce. Instead the wife claims merely that the portion of the husband's pension benefits representing compensation for post-divorce employment and consequently not counted in the property division at divorce should be treated as an income stream available for maintenance.

We agree with the wife's position. Although we acknowledge and affirm our longstanding precedent, first enunciated in *Kronforst*, against double-counting an asset included in the property division at divorce, we conclude that assets acquired after the divorce (and thus not included in the property division at divorce) are available to satisfy post-divorce maintenance obligations. *Bloomer*, 84 Wis. 2d at 127 n.1.[7] Dividing the husband's pension in this way is consistent with *Bloomer* and its progeny. It is also consistent with *Kronforst* for reasons enunciated in *Bloomer*: for all practical purposes, assets acquired prior to divorce and

---

[7] *See Gerritis v. Gerritis*, 167 Wis. 2d 429, 436, 482 N.W.2d 134 (Ct. App. 1992) (proceeds from lottery ticket purchased five months after divorce are available to satisfy maintenance obligations).

assets acquired subsequent to divorce represent two conceptually distinct funds.

Thus the pension receipts at issue in this case should be separated into two portions. One portion, attributable to labor performed during marriage, was already divided at divorce. A pension plan representing wealth accumulated during marriage must be included in the property division made at divorce. *Steinke*, 126 Wis. 2d at 381. A second portion, attributable to post-divorce employment and therefore not part of property earned during the marriage and not subject to division as marital property at divorce, is available to satisfy post-divorce maintenance obligations.[8]

We recognize, however, that this division of the pension receipts leaves unresolved a myriad of related valuation problems. We have long recognized that a pension interest "is very difficult to value." *Steinke*, 126 Wis. 2d 372, 384, quoting *Schafer v. Schafer*, 3 Wis. 2d 166, 171, 87 N.W.2d 803 (1958). It is for this reason that circuit courts retain broad discretion in the com-

---

[8] The record in this case admittedly leaves unclear exactly how the pension plan was valued for purposes of the property division. What is clear, however, is that the husband accumulated eight additional service years at Miller Brewing after the divorce and also received a five-year credit from Miller Brewing for accepting early retirement. Given that the value added to the pension from these thirteen additional years of service credit constitutes legally separate property, it is unlikely that it was accounted for in the property division at divorce.

Income, if any, generated from the pre-divorce portion of the pension is apparently not at issue in this case. *See Hommel*, 162 Wis. 2d at 783, 789, 796 (income from assets available for maintenance).

plex task of valuing pension rights. *Bloomer*, 84 Wis. 2d at 130-34; *Steinke*, 126 Wis. 2d at 376; *Ably v. Ably*, 155 Wis. 2d 286, 290, 455 N.W.2d 632 (Ct. App. 1990).

The retirement plan at issue appears to be a defined benefit plan, which compounds further the difficulties intrinsic to valuation of retirement benefits.[9] At divorce, the present value of a defined benefit pension plan is ordinarily based on the employee's salary and length of service at the divorce, the defined benefit formula then in effect, and assumptions about the projected date of retirement, mortality rates and interest rates.[10] Apparently, the value of the husband's pension

---

[9] Because defined benefit plans, in contrast to defined contribution plans, are usually based largely or entirely on monies contributed by the employer, there is often no significant relation between "contributions" which have been made on an employee's behalf by the time of divorce and the considerably larger fund of monies which the employee will receive at retirement. Moreover, no separate account is maintained for each employee. Grace Ganz Blumberg, *Intangible Assets Recognition and Valuation, in Valuation and Distribution of Marital Property* § 23.02[4] (1994); Oldham, *supra* at 7-59. *See also Selchert*, 90 Wis. 2d at 8-10 (noting the difficulties and lack of predictability associated with valuing defined benefit plans).

[10] *See, e.g.*, Oldham, *supra* at 7-76 to 7-79; Turner, *supra* at 366-76; Marvin Snyder, *Value of Pensions in Divorce* 8-9 (2d ed. 1989).

The record includes a statement by the Office of the Commissioner of Insurance that the then present value of the husband's monthly retirement benefit of $557.00 for life was $14,193, using the standard actuarial methods and assumptions prescribed by Wis. Stat. § 879.65 (1983-84). The Commissioner used the American Experience Table and a five percent rate. The record does not explain the basis for the parties' stipulation and the judgment reaching a lesser value of $11,355.

plan in this case was calculated for immediate distribution to the wife by offsetting the value of the plan against other property in the estate.[11]

A further valuation problem in this case involves how to calculate what portion of the husband's pension benefits is available for maintenance. The wife takes the position that the husband has already received pension payments in excess of $11,355, the value of the pension awarded to the husband in the property division. The husband receives pension benefits of approximately $32,370 a year for life and has already been receiving the benefits for more than two years.[12]

The wife argues that "it is readily apparent that [the husband] has already recovered the full value of the pension . . . . Therefore, all future benefits from the pension should be considered in [the husband's] income stream . . . ." Brief of Respondent at 17. The husband's brief does not address this issue.

---

[11] We say apparently because the record is not entirely clear on this point. The valuation of the pension in this case appears to represent a discounting of the value of the husband's pension at divorce from its projected worth in the year 2002, when the husband would reach his anticipated retirement age of 65.

[12] Because the husband took voluntary early retirement and began to receive pension payments a full decade before his projected retirement date, his pension was dramatically undervalued in the property division at divorce. The plan was valued in 1984 from the year 2002, at which time the husband would be 65 years of age. Therefore, the husband received a lower valuation of the pension and relinquished fewer assets in the property division than he would have if the value of his plan in 1984 had been discounted only from 1992. By procuring the use of those dollars ten years earlier than projected, the husband averted the full projected discount incorporated in the divorce judgment.

On the basis of the record before us we assume that the husband has recovered the full value of the pension benefits awarded him in the property division and that therefore all future receipts of pension benefits are available in their entirety for possible maintenance obligations.

For the reasons set forth, we affirm the order of the circuit court.

*By the Court.*—The order of the circuit court is affirmed.